[No. S046116. Apr. 15, 1996.]

In re the Marriage of WENDY A. and PAUL D. BURGESS.
WENDY A. BURGESS, Respondent, v.
PAUL D. BURGESS, Appellant.

---

## COUNSEL

William B. Cater, Goldberg, Fisher & Quirk and Edward J. Quirk, Jr., for Appellant.

Bryan Law Corporation, Richard M. Bryan and Sondra W. Barnet as Amici Curiae on behalf of Appellant.

Donald M. Adams, Jr., Joseph I. Anderson, Allred, Maroko & Goldberg, Michael Maroko, Renee Mochkatel and Ruth E. Graf for Respondent.

Roberta M. Ikemi and Joan Zorza as Amici Curiae on behalf of Respondent.

Carol S. Bruch, Janet Bowermaster, Tanke & Willemsen and Tony J. Tanke as Amici Curiae.

---

## OPINION

**MOSK, J.**—This matter requires us to determine whether a parent seeking to relocate after dissolution of marriage is required to establish that the move is "necessary" before he or she can be awarded physical custody of minor children. In this case, a parent with temporary physical custody of two minor children sought a judicial determination of permanent custody and expressed the intention to relocate with the children from Tehachapi to Lancaster, California, a distance of approximately 40 miles. The trial court ordered that it was in the "best interest" of the minor children to remain in the physical custody of that parent even if she moved to Lancaster; it ordered "liberal visitation" with the noncustodial parent. The Court of Appeal reversed, on the ground that the custodial parent failed to carry her burden of establishing that relocating with the minor children was "necessary."[1]

We conclude that, in an initial judicial custody determination based on the "best interest" of minor children, a parent seeking to relocate does not bear

---

[1]In referring to a "custodial" parent and "noncustodial" parent hereafter, we refer to "physical custody" of minor children. (Fam. Code, § 3007.)

a burden of establishing that the move is "necessary" as a condition of custody. Similarly, after a judicial custody order is in place, a custodial parent seeking to relocate bears no burden of establishing that it is "necessary" to do so. Instead, he or she "has the right to change the residence of the child, subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child." (Fam. Code, § 7501.) Accordingly, we reverse the judgment of the Court of Appeal.

## I.

Paul D. Burgess (hereafter the father) and Wendy A. Burgess (hereafter the mother) were married and had two children, Paul and Jessica. Both parents were employed by the State Department of Corrections at the state prison in Tehachapi and owned a home in a suburb. They separated in May 1992, when the children were four and three years old. The mother moved with the children to an apartment in Tehachapi; the father remained in their former home, pending sale of the property. The mother petitioned for dissolution shortly thereafter.

In July 1992, the trial court entered a "Stipulation and Order" dissolving the marriage and providing for temporary custody and visitation in accordance with a mediation agreement between the parties. The parents agreed that they "shall share joint legal custody of the children. The mother shall have sole physical custody of the children."[2]

The mediation agreement expressly identified as "[a]t [i]ssue" the visitation schedule for the father "if the mother leaves Kern County." The parents agreed to a detailed schedule for weekly visitation by the father, as well as an alternative schedule for biweekly weekend visitation, depending on his work schedule.

At a hearing concerning custody in February 1993, the mother testified that she had accepted a job transfer to Lancaster and planned to relocate after her son's graduation from preschool in June. She explained that the move was "career advancing" and would permit greater access for the children to medical care, extracurricular activities, and private schools and day-care

---

[2] " 'Joint legal custody' means that both parents shall share the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (Fam. Code, § 3003.) " 'Sole physical custody' means that a child shall reside with and be under the supervision of one parent, subject to the power of the court to order visitation." (*Id.*, § 3007.) "In making an order for custody with respect to both parents, the court may grant joint legal custody without granting joint physical custody." (*Id.*, § 3085.) "An order of joint legal custody shall not be construed to permit an action that is inconsistent with the physical custody order unless the action is expressly authorized by the court." (*Id.*, § 3083.)

facilities. The travel time between Lancaster and her home in Tehachapi was approximately 40 minutes. The father testified that he would not be able to maintain his current visitation schedule if the children moved to Lancaster; he wanted to be their primary caretaker if the mother relocated.

The trial court issued a ruling providing that the father and the mother would share joint legal custody, with the mother to have sole physical custody. It retained the present visitation schedule, but provided that after June 1993, "the father will have visitation with the children, assuming the wife moves to Lancaster, on alternate weekends . . . with at least one three hour midweek visitation . . . ."

The father moved for reconsideration and for a change in custody, alleging that the mother "has constantly used my contact with the children to harass me." The mother opposed a change in custody, alleging that the father "does not utilize all of the time with our children that is available to him now."

In July 1993, the trial court denied the motion for reconsideration, ruling that the father failed to file an affidavit stating any "new or different facts." Shortly thereafter, it held a hearing on the motion for change in custody. The father presented no testimony concerning alleged harassment. He again testified that if his children relocated with the mother he would not be able to maintain his current visitation schedule; he sought a custody arrangement under which each parent would have the children for "[a]bout a month and a half." He also testified that he regularly traveled to Lancaster on alternate weekends, to shop and visit friends; he characterized the trip to Lancaster from his home as "an easy commute."

The mother testified that she had been working in Lancaster for four months and planned to move there. She identified several advantages to the children to living in Lancaster, including proximity to medical care and increased opportunities to participate in extracurricular activities. She also testified that the father objected to her move, at least in part, in order to retain control of her and the children. To her understanding, he did not want to change his work shift "because it keeps me in Tehachapi." She expressed her willingness to accommodate weekend visitation with the father as well as extended visitation in the summers.

In August 1993, the trial court issued an order on custody and visitation to the following effect. "The court finds that it is in the best interest of the minor children that the minors be permitted to move to Lancaster with the petitioner and that respondent be afforded liberal visitation. Due to the

complexity of the work schedules of both of the parties, who are employed by the California Department of Corrections, the court requests that a four-way meeting be held by the parties within ten days from the date of this order to work out a mutually agreed upon visitation schedule. In the event that such a schedule cannot be worked out, then the parties are to attend mediation. [¶] The court suggests that during the summertimes and if school is on a year round basis, that respondent father be provided with 'large block of time' visitations."

The father appealed from both the order denying reconsideration and the order denying change in custody; the appeals were consolidated.

The Court of Appeal reversed. It formulated the following test for relocation cases. The trial court initially must determine whether the move "will impact significantly the existing pattern of care and adversely affect the nature and quality of the noncustodial parent's contact with the child. The burden is on the noncustodial non-moving parent to show this adverse impact." If the impact is shown, the trial court must determine whether the move is "reasonably necessary," with "the burden of showing such necessity fall[ing] on the moving parent." If it concludes that the move is "necessary"—either because not moving would impose an unreasonable hardship on custodial parent's career or other interests or because moving will result in a discernible benefit that it would be unreasonable to expect the parent to forgo—the trial court "must resolve whether the benefit to the child in going with the moving parent outweighs the loss or diminution of contact with the nonmoving parent."

On the facts before it, the Court of Appeal concluded that "no showing of necessity was made." "[T]he reality here is that in moving, [the mother] primarily gained convenience." It reversed the orders and remanded for further proceedings consistent with the opinion. We granted review. We now reverse.

## II.

This matter was in the trial court for an initial permanent custody order. Although the parties had previously stipulated to a temporary custody arrangement, there was no permanent judicial custody determination in place at the time of the hearings.

In an initial custody determination, the trial court has "the widest discretion to choose a parenting plan that is in the best interest of the child." (Fam. Code, § 3040, subd. (b).) It must look to *all the circumstances* bearing on the

best interest of the minor child. (*Burchard* v. *Garay* (1986) 42 Cal.3d 531, 534 [229 Cal.Rptr. 800, 724 P.2d 486, 62 A.L.R.4th 237].) Family Code section 3011 lists specific factors, "among others," that the trial court must consider in determining the "best interest" of the child in a proceeding to determine custody and visitation: "(a) The health, safety, and welfare of the child. [¶] (b) Any history of abuse by one parent against the child or against the other parent. . . . [¶] (c) The nature and amount of contact with both parents."

In addition, in a matter involving immediate or eventual relocation by one or both parents, the trial court must take into account the presumptive right of a custodial parent to change the residence of the minor children, so long as the removal would not be prejudicial to their rights or welfare. (Fam. Code, § 7501 ["A parent entitled to custody of a child has a right to change the residence of the child, subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child."].) Accordingly, in considering all the circumstances affecting the "best interest" of minor children, it may consider any effects of such relocation on their rights or welfare.

■ The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test. (*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 208 [259 P.2d 656].) The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the "best interest" of the child. We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked. (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

■ No abuse of discretion appears. After extensive testimony from both parents, the trial court not unreasonably concluded that it was in the "best interest" of the minor children that the father and the mother retain joint legal custody and that the mother retain sole physical custody, even if she moved to Lancaster.

The trial court's order was supported by substantial evidence concerning the "best interest" of the minor children. First, and most important, although they had almost daily contact with both parents during the initial period after the separation, the minor children had been in the sole physical custody of the mother for over a year at the time the trial court issued its order concerning permanent custody. Although they saw their father regularly, their mother was, by parental stipulation and as a factual matter, their primary caretaker. ■ As we have repeatedly emphasized, the paramount need for continuity and stability in custody arrangements—and the harm that

may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining ongoing custody arrangements. (*In re Marriage of Carney* (1979) 24 Cal.3d 725, 730 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028]; *Burchard* v. *Garay, supra,* 42 Cal.3d at p. 541.)

From the outset, the mother had expressed her intention to relocate to Lancaster. The reason for the move was employment related; the mother evinced no intention to frustrate the father's contact with the minor children. Moreover, despite the fact that the move was, as the Court of Appeal observed, primarily for the mother's "convenience," her proximity to her place of employment and to the children during the workday would clearly benefit the children as well. A reduced commute would permit increased and more leisurely daily contact between the children and their primary caretaker. It would also facilitate the children's participation, with their mother, in extracurricular activities. In the event of illness or emergency, the children could more promptly be picked up and treated, if appropriate, at their regular medical facility, which was also located in Lancaster.

Although it would be more convenient for the father to maintain a daily visitation routine with the children if they remained in Tehachapi, he would still, even under his present work schedule, be able to visit them regularly and often. The trial court's order of "liberal visitation" included overnight visits on alternative weekends and additional weekday visits each month. The father conceded that he regularly traveled to Lancaster and that he considered it an "easy commute."

The record reflects that the trial court, as required by Family Code section 3011, considered the "health, safety, and welfare" of the children as well as the "nature and amount of contact with both parents." (Fam. Code, § 3011, subds. (a) & (c).) No evidence was presented concerning the additional mandatory factor for consideration, i.e., "[a]ny history of abuse." (*Id.,* subd. (b).) Although the father alleged that he had been "harassed," he presented no evidence to support the assertion. Similarly, although the mother testified that she believed the father wanted to "control" her, she did not allege abuse. There was also no history of abuse by either parent of the minor children; indeed, each parent conceded that the children were well treated and expressed a willingness to afford each other liberal visitation.

## III.

The Court of Appeal concluded that the trial court abused its discretion in ordering that the mother should retain physical custody, on the ground that

her relocation to Lancaster was not "necessary." It therefore remanded the case and directed the trial court "to reconsider its order permitting [the mother] to move the children and refusing a transfer of custody." In effect, it concluded that because she failed to carry the burden of establishing that the relocation to Lancaster was "necessary," physical custody of the minor children may be transferred to the father. It erred thereby.

■ In an initial custody determination, a parent seeking to relocate with the minor children bears no burden of establishing that the move is "necessary." The trial court must—and here did—consider, among other factors, the effects of relocation on the "best interest" of the minor children, including the health, safety, and welfare of the children and the nature and amount of contact with both parents. (Fam. Code, § 3011, subds. (a) & (c).) We discern no statutory basis, however, for imposing a specific additional burden of persuasion on *either* parent to justify a choice of residence as a condition of custody.

The Court of Appeal relied on Family Code section 3020: "The Legislature finds and declares that it is the public policy of this state to assure minor children frequent and continuing contact with both parents after the parents have separated or dissolved their marriage, and to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy, except where the contact would not be in the best interest of the child, as provided in [Family Code] [s]ection 3011."

In substance, the Court of Appeal concluded that Family Code section 3020 establishes an implicit requirement, limiting the trial court's discretion under Family Code section 3011, that, after separation or dissolution of marriage, the trial court may not award sole physical custody of the minor children to a parent unless he or she remains in the same locality or establishes that relocation is "necessary."

We are unpersuaded. The policy of Family Code section 3020 in favor of "frequent and continuous contact" does not so constrain the trial court's broad discretion to determine, in light of *all* the circumstances, what custody arrangement serves the "best interest" of minor children.

The Family Code specifically refrains from establishing a preference or presumption in favor of *any* arrangement for custody and visitation. Thus, Family Code section 3040, subdivision (b), provides: "This section establishes neither a preference nor a presumption for or against joint legal custody, joint physical custody, or sole custody, but *allows the court and the family the widest discretion* to choose a parenting plan that is in the best

interest of the child." (Italics added.) Similarly, although Family Code section 3020 refers to "frequent and continuous contact," it does not purport to define the phrase "frequent and continuous" or to specify a preference for any particular form of "contact." Nor does it include any specific means of effecting the policy, apart from "encourag[ing] parents to share the rights and responsibilities of child rearing." (*Ibid.*)

Moreover, construing Family Code section 3020 *by implication* to impose an additional burden of proof on a parent seeking to relocate would abrogate the presumptive right of a custodial parent to change the residence of the minor child. (Fam. Code, § 7501.)[3] It has long been established that, under Family Code section 7501, the "general rule [is that] a parent having child custody is entitled to change residence unless the move is detrimental to the child." (*In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 293 [132 Cal.Rptr. 261]; see also *Forslund* v. *Forslund* (1964) 225 Cal.App.2d 476, 494 [37 Cal.Rptr. 489] ["[I]n the absence of a showing that the removal of the child's place of residence is inconsistent with the child's welfare, such removal per se does not warrant a change of custody."].)[4]

As this case demonstrates, ours is an increasingly mobile society. Amici curiae point out that approximately one American in five changes residences each year. (See Bruch & Bowermaster, *The Relocation of Children and Custodial Parents: Public Policy, Past and Present* (1996) 30 Fam.L.Q. 245, 248.) Economic necessity and remarriage account for the bulk of relocations. (*Id.* at pp. 248-249.) Because of the ordinary needs for *both* parents after a marital dissolution to secure or retain employment, pursue educational or career opportunities, or reside in the same location as a new spouse or other

---

[3]The background of the "legislative findings" under Family Code section 3020 offers no support for the Court of Appeal's conclusion. None of the contemporaneous materials, including the committee reports and analyses regarding Assembly Bill No. 1480—which, in 1979, added the reference to "frequent and continuing contact" to what is now Family Code section 3020—include any suggestion that it was intended to revise or supersede Family Code section 7501 or to otherwise place a burden of proof on a custodial parent that relocation is "necessary," either in an initial custody determination or a subsequent modification proceeding.

[4]Family Code section 7501 applies, on its face, to cases involving removal of a child by a parent entitled to custody. Moreover, since it was enacted in 1872, it has not been repealed or substantively amended, despite the fact that it has consistently been applied by our courts in move-away cases. (See, e.g., *In re Marriage of Ciganovich, supra*, 61 Cal.App.3d 289; *Forslund* v. *Forslund, supra*, 225 Cal.App.2d 476; *Walker* v. *Superior Court* (1966) 246 Cal.App.2d 749, 753 [55 Cal.Rptr. 114]; *Shea* v. *Shea* (1960) 100 Cal.App.2d 60, 63 [223 P.2d 32]; *Dozier* v. *Dozier* (1959) 167 Cal.App.2d 714, 719 [334 P.2d 957]; see also *Luck* v. *Luck* (1892) 92 Cal. 653, 655 [28 P. 787] [A parent entitled to custody "has the right to name any reasonable place in which [the children] shall abide with him."].) It must, however, be harmonized with other provisions of the Family Code concerning custody; we do not suggest, of course, that a parent has the "right" under Family Code section 7501 to remove a child if such removal would derogate the child's "best interest." As discussed in the text, after a judicial custody determination, the usual "changed circumstances" test applies in removal cases.

family or friends, it is unrealistic to assume that divorced parents will permanently remain in the same location after dissolution or to exert pressure on them to do so. It would also undermine the interest in minimizing costly litigation over custody and require the trial courts to "micromanage" family decisionmaking by second-guessing reasons for everyday decisions about career and family.[5]

More fundamentally, the "necessity" of relocating frequently has little, if any, substantive bearing on the suitability of a parent to retain the role of a custodial parent. A parent who has been the primary caretaker for minor children is ordinarily no less capable of maintaining the responsibilities and obligations of parenting simply by virtue of a reasonable decision to change his or her geographical location.[6]

Accordingly, we decline to interpret Family Code section 3020, in the absence of express statutory language, to impose a burden of proof on a parent seeking to relocate with the minor children to establish "necessity." A trial court may consider the extent to which the minor children's contact with their noncustodial parent will be impaired by relocating. In so doing, however, it is not restricted to any particular formula for contact or visitation; nor is it required to make a custody determination that preserves the predissolution status quo.[7]

Here, the trial court adequately satisfied the policy under Family Code section 3020 in favor of "frequent and continuing contact" by ordering "liberal visitation" with the father if the mother relocated.

---

[5]In this matter, the parties continue to dispute whether the mother's change of employment was merely a "lateral" move or was "career enhancing." The point is immaterial. Once the trial court determined that the mother did not relocate in order to frustrate the father's contact with the minor children, but did so for sound "good faith" reasons, it was not required to inquire further into the wisdom of her inherently subjective decisionmaking.

[6]An obvious exception is a custodial parent's decision to relocate simply to frustrate the noncustodial parent's contact with the minor children. "Conduct by a custodial parent designed to frustrate visitation and communication may be grounds for changing custody." (*Burchard* v. *Garay, supra,* 42 Cal.3d at p. 540, fn. 11; *In re Marriage of Ciganovich, supra,* 61 Cal.App.3d at p. 294 ["a custodial parent's attempt to frustrate the court's order has a bearing upon the fitness of that parent"].) Even if the custodial parent is otherwise "fit," such bad faith conduct may be relevant to a determination of what permanent custody arrangement is in the minor children's best interest. (*In re Marriage of Ciganovich, supra,* 61 Cal.App.3d at pp. 293-294; Fam. Code, § 3040, subd. (a)(1) ["In making an order granting custody to either parent, the court shall consider, among other factors, which parent is more likely to allow the child frequent and continuing contact with the noncustodial parent . . . ."].)

[7]The father argues that most custodial parents seeking to relocate are merely "bluffing"; they will not move if it will result in loss of custody. Even assuming his assumption is sound, the Family Code provides no ground for permitting the trial court to test parental attachments or to risk detriment to the "best interest" of the minor children, on that basis. Nor should either parent be confronted with Solomonic choices over custody of minor children.

## IV.

 Although this matter involved an initial order of custody and visitation,[8] the same conclusion applies when a parent who has sole physical custody under an *existing* judicial custody order seeks to relocate: the custodial parent seeking to relocate, like the noncustodial parent doing the same, bears no burden of demonstrating that the move is "necessary."

Ordinarily, after a judicial custody determination, the noncustodial parent seeking to alter the order for legal and physical custody can do so only on a showing that there has been a substantial change of circumstances so affecting the minor child that modification is essential to the child's welfare. (*Burchard* v. *Garay*, *supra*, 42 Cal.3d at p. 534.) As we have explained: "The [changed circumstance] rule requires that one identify a prior custody decision based upon circumstances then existing which rendered that decision in the best interest of the child. The court can then inquire whether alleged new circumstances represent a significant change from preexisting circumstances, requiring reevaluation of the child's custody." (*Ibid.*)

 ██ ██ We conclude that the same allocation of the burden of persuasion applies in the case of a custodial parent's relocation as in any other proceeding to alter existing custody arrangements: "[I]n view of the child's interest in stable custodial and emotional ties, custody lawfully acquired and maintained for a significant period will have the effect of compelling the noncustodial parent to assume the burden of persuading the trier of fact that a change [in custody] is in the child's best interests." (*Burchard* v. *Garay*, *supra*, 42 Cal.3d at p. 536.)[9]

Similarly, the same standard of proof applies in a motion for change in custody based on the custodial parent's decision to relocate with the minor

---

[8]As the dissenting opinion in the Court of Appeal correctly points out, the majority therein analyzed this matter as though it involved modification of a permanent custody order, despite the fact that it was "still at the initial custody order stage, rather than before trial court on modification of a permanent order." The parties and numerous amici curiae have briefed the case accordingly and have urged that we clarify the standard in "move-away" cases generally. Although we conclude that this case involved an initial custody determination rather than a "change of circumstances," we recognize that the considerations and interests in both types of custody matters are closely interrelated. For that reason, and to resolve a conflict in our Courts of Appeal on these matters—which one Court of Appeal decision aptly describes as a " 'tangled web of precedent' " (*In re Marriage of Selzer* (1994) 29 Cal.App.4th 637, 640 [34 Cal.Rptr.2d 824])—we address both situations.

[9]In some cases, a custodial parent may be required to provide advance notice of a change in residence of the child: "In making an order for custody, if the court does not consider it inappropriate, the court may specify that a parent shall notify the other parent if the parent plans to change the residence of the child for more than 30 days, unless there is prior written agreement to the removal. . . . To the extent feasible, the notice shall be provided within a minimum of 45 days before the proposed change of residence so as to allow time for mediation of a new agreement concerning custody." (Fam. Code, § 3024.) The provision is

children as in any other matter involving changed circumstances: "[O]nce it has been established [under a judicial custody decision] that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest." (*Burchard* v. *Garay, supra,* 42 Cal.3d at p. 535.)

The showing required is substantial. We have previously held that a child should not be removed from prior custody of one parent and given to the other " 'unless the material facts and circumstances occurring subsequently are of a kind to render it essential or expedient for the welfare of the child that there be a change.' " (*In re Marriage of Carney, supra,* 24 Cal.3d at p. 730.) In a "move-away" case, a change of custody is not justified simply because the custodial parent has chosen, for any sound good faith reason, to reside in a different location, but only if, as a result of relocation with that parent, the child will suffer detriment rendering it " 'essential or expedient for the welfare of the child that there be a change.' " (*Ibid.*)

This construction is consistent with the presumptive "right" of a parent entitled to custody to change the residence of his or her minor children, unless such removal would result in "prejudice" to their "rights or welfare." (Fam. Code, § 7501.) The dispositive issue is, accordingly, *not* whether *relocating* is itself "essential or expedient" either for the welfare of the custodial parent or the child, but whether a *change in custody* is " 'essential or expedient for the welfare of the child.' " (*In re Marriage of Carney, supra,* 24 Cal.3d at p. 730; see also *In re Marriage of Battenburg* (1994) 28 Cal.App.4th 1338, 1344 [33 Cal.Rptr.2d 871] [In case involving joint physical custody, "[i]n deciding whether it is in the child's best interest to change custody [when one custodial parent seeks to relocate with the minor children], the trial court should ask itself whether *the custody change* is 'expedient-essential-imperative.' " (Italics added.)].)[10]

---

not mandatory. We do not construe it to limit, expressly or by implication, the right of a custodial parent to relocate under Family Code section 7501. To the extent it concludes otherwise, we therefore disapprove *In re Marriage of Carlson* (1991) 229 Cal.App.3d 1330, 1336-1337 [280 Cal.Rptr. 840].

[10]To the extent that recent decisions by the Courts of Appeal have placed an additional burden on a custodial parent in relocation matters of proving that relocation itself is "essential and expedient" and "for an imperative reason"—or merely "necessary"—they are erroneous and hereby disapproved on this point. (See *In re Marriage of McGinnis* (1992) 7 Cal.App.4th 473, 479 [9 Cal.Rptr.2d 182] ["[t]he burden of proof is upon the 'move away' parent to demonstrate that the move *is* in the best interests of the children, i.e., that it is 'essential and expedient' and for an 'imperative reason.' "]; *In re Marriage of Selzer, supra,* 29 Cal.App.4th at pp. 644-645 [Rejecting " 'expedient, essential or imperative' " rule but concluding that "the

At the same time, we recognize that bright line rules in this area are inappropriate: each case must be evaluated on its own unique facts. Although the interests of a minor child in the continuity and permanency of custodial placement with the primary caretaker will most often prevail, the trial court, in assessing "prejudice" to the child's welfare as a result of relocating even a distance of 40 or 50 miles, may take into consideration the nature of the child's existing contact with both parents—including de facto as well as de jure custody arrangements—and the child's age, community ties, and health and educational needs. Where appropriate, it must also take into account the preferences of the child. (Fam. Code, § 3042, subd. (a) ["If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody, the court shall consider and give due weight to the wishes of the child in making an order granting or modifying custody."].)[11]

Thus, for example, in *In re Marriage of Rosson, supra,* 178 Cal.App.3d 1094, the Court of Appeal affirmed the decision of the trial court that the mother's decision to move from Napa to San Francisco—a two-hour commuting distance—*did* require a change in physical custody. Under the standard we are announcing, it could properly consider the preferences of the children, aged 10 and 13, for remaining in Napa and take into account the facts that both parents had de facto physical custody of the children and that the father had assumed substantial parenting responsibilities relating to the children's academic, athletic, social, and religious activities. Similarly, *In re Marriage of Selzer, supra,* 29 Cal.App.4th 637, the same Court of Appeal affirmed the trial court's determination that the custodial parent's decision to move from Ukiah to Santa Rosa—a one-hour commuting distance—*did not* require a change in physical custody. Again, under our standard, it could reasonably consider the presumption in favor of stability and continuity in the child's primary custodial relationship—in that case with her mother— and the child's lack of preference for changing the custody arrangement. (*Id.* at p. 645.) It could also reasonably affirm the trial court's visitation order,

moving parent does in fact bear a burden of proof . . . to show that the move was not only necessary to the custodial parent but would also be in the best interests of the child."]; *In re Marriage of Roe* (1993) 18 Cal.App.4th 1483, 1489-1490 [23 Cal.Rptr.2d 295] [custodial parent seeking to relocate with a minor child must establish that move is "necessary" and in child's "best interest"]; *In re Marriage of Rosson* (1986) 178 Cal.App.3d 1094, 1102 [224 Cal.Rptr. 250] [custodial parent seeking to relocate bears "the burden of showing a change sufficient to warrant modification"].)

[11]We note that amica curiae Professor Judith S. Wallerstein, who has published extensively on issues concerning children after divorce, observes that for "reasonably mature adolescents, i.e., those who are well adjusted and performing on course in their education and social relationships . . . stability may not lie with either parent, but may have its source in a circle of friends or particular sports or academic activities within a school or community." She suggests that "[t]hese adolescents should be given the choice . . . as to whether they wish to move with the moving parent."

which provided for increased visitation with the father and also required the mother to drive the child to Ukiah for visitation. (*Id.* at p. 640.)[12]

Even if "prejudice" is not established and a change in custody is not " 'essential or expedient for the welfare of the child' " (*In re Marriage of Carney, supra,* 24 Cal.3d at p. 730), however, the trial court has broad discretion to modify orders concerning contact and visitation to minimize the minor children's loss of contact and visitation with the noncustodial parent in the event of a move, e.g., by increasing the amount of visitation with the noncustodial parent during vacations from school, allocating transportation expenses to the custodial parent, or requiring the custodial parent to provide transportation of the children to the noncustodial parent's home. Indeed, such modifications of orders regarding contact and visitation may obviate the need for costly and time-consuming litigation to change custody, which may itself be detrimental to the welfare of minor children because of the uncertainty, stress, and even ill will that such litigation tends to generate. Similarly, a noncustodial parent's relocation far enough away to preclude the exercise of existing visitation rights can be ground for modifying a visitation order to allow for a different schedule for contact with the minor children, e.g., longer, but less frequent, visitation periods. (See *In re Marriage of Murga* (1980) 103 Cal.App.3d 498, 503 [163 Cal.Rptr. 79].)

For the reasons discussed, we reverse the judgment of the Court of Appeal.

Lucas, C. J., Kennard, J., George, J., Werdegar, J., and Chin, J., concurred.

**BAXTER, J.,** Concurring and Dissenting.—I concur in the majority's result and in much of its reasoning. I agree that in an initial judicial custody determination—the situation presented by this case—the court simply considers all the relevant factors, including the parents' respective relationships with the child and any potential relocation of either parent, to determine what formal custody and visitation arrangements are in the "best interest of the child." As the majority hold, a parent who seeks to relocate with the child has no special burden of proving the move is "necessary" as a precondition to obtaining a formal award of custody.

---

[12]A different analysis may be required when parents *share* joint physical custody of the minor children under an existing order and in fact, and one parent seeks to relocate with the minor children. In such cases, the custody order "may be modified or terminated upon the petition of one or both parents or on the court's own motion if it is shown that the best interest of the child requires modification or termination of the order." (Fam. Code, § 3087.) The trial court must determine de novo what arrangement for primary custody is in the best interest of the minor children.

Here, the relocating parent was already acting as the child's custodian under the terms of an interim agreement. Moreover, the reasons for relocation were legitimate, the distance was short and rapidly traversed, the facilities available to the child in the new location were excellent, and the other parent's visitation rights could be accommodated with relative ease. Hence, as the majority suggest, the trial court did not abuse its discretion by concluding that a formal award of custody to the relocating parent was in the child's "best interest."

I also agree with the majority that when a relocation dispute arises *after* an initial award of custody has been made, the usual "changed circumstances" rule should apply. A child's welfare is not served by casual changes in caregiving arrangements, and the law abhors the endless relitigation of matters already determined. Hence, the parent who seeks a change in formal custody based on "changed circumstances" (including a parental relocation) bears the burden of persuading the court that *in light of the new circumstances*, an alteration of the existing award is in the child's "best interest." (*Burchard* v. *Garay* (1986) 42 Cal.3d 531, 536 [229 Cal.Rptr. 800, 724 P.2d 486, 62 A.L.R.4th 237].) Thus again, a parent who wishes to relocate with the child has no special burden of proving the move is "necessary."

While I acknowledge that the "changed circumstances" rule properly places the *burden* of a "best interest" showing on the parent who seeks to modify an existing formal custody award, I believe the "best interest" test itself retains its usual meaning in such cases. Insofar as the majority imply that the child's "best interest" has a special, more stringent connotation in a "changed circumstances" case, I cannot subscribe to their reasoning.

My concern arises because of the majority's focus on language in *In re Marriage of Carney* (1979) 24 Cal.3d 725 [157 Cal.Rptr. 383, 598 P.2d 36, 3 A.L.R.4th 1028] (*Carney*) to the effect that because the law favors custodial stability, a change in formal custody cannot be ordered absent a showing of new circumstances which " 'render it *essential or expedient* for the welfare of the child that there be a change.' [Citation.]" (*Id.* at p. 730, italics added.) Furthermore, the majority insist, when the modification dispute concerns a custodial parent's wish to relocate, the case is governed by an 1872 statute, now Family Code section 7501 (hereafter section 7501), which declares that "[a] parent entitled to the custody of a child has the right to change the residence of the child, subject to the power of the court to restrain a removal that would *prejudice* the rights or welfare of the child." (Italics added.) According to the majority, this statute reflects "the presumptive 'right' " of a parent with formal custody to change the child's residence, regardless of the other parent's objections, unless the move would be

prejudicial to the child's welfare. (Maj. opn., *ante*, at p. 38; see also *id.* at p. 29.)

If the majority are applying these authorities to suggest that an existing formal custody award cannot be modified in the child's "best interest" absent a showing of *positive detriment or necessity*, I cannot agree. In my view, the statute and the decision on which the majority primarily rely do not lead to that conclusion. Nor should it be endorsed as a matter of public policy.

Section 7501 has no specific reference to parental custody disputes, and it appears in a section of the code dealing with "rights" *as between* parents and their children. (See Fam. Code, div. 12, pt. 1, § 7500 et seq.) Insofar as this statute and its 1872 predecessor may nonetheless apply to "move-away" disputes between parents (see, e.g., *In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 293 [132 Cal.Rptr. 261], and authorities there cited), the statutory language must be read in harmony with later and more comprehensive legislative declarations about the issues pertinent here.

When it adopted the Family Law Act in 1969, the Legislature specified that custody disputes between parents must be decided exclusively on the basis of the *child's* "best interest." (Fam. Code, §§ 3011, 3040, subds. (a)(1), (b); see Civ. Code, former § 4600, subds. (a), (b).) This court has made clear that the statutory "best interest" test, which allows the court and family "the widest discretion to choose a parenting plan . . . in the best interest of the child" (Fam. Code, § 3040, subd. (b)), "governs *all* custody proceedings." (*Burchard* v. *Garay*, *supra*, 42 Cal.3d 531, 535, citing *In re B.G.* (1974) 11 Cal.3d 679, 695-696 [114 Cal.Rptr. 444, 523 P.2d 244], italics added.)

The Family Law Act further declares that when weighing how parental custody should be arranged in the child's "best interest," the court must consider "which parent is more likely to allow the child frequent and continuing contact with the noncustodial parent." (Fam. Code, § 3040, subd. (a)(1).) That is because "it is the public policy of this state to *assure* minor children frequent and continuing contact with *both* parents after the parents have separated or dissolved their marriage, and to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy, except where the contact would *not* be in the best interest of the child." (*Id.*, § 3020, italics added.)

Given these legislative developments, section 7501 cannot be read to mean that a relocating parent may retain custodial "rights" which no longer suit the child's "best interest" so long as the move causes the child no

positive harm. If the majority are suggesting otherwise, we part company to that extent.[1]

Moreover, despite some expansive language in *Carney, supra,* 24 Cal.3d 725, and earlier cases, these decisions need not and should not be read to require showings of positive detriment or necessity in "changed circumstances" cases. The implication of these cases, which I do not dispute, is simply that the *prior* "best interest" finding, which led to the initial custody award, may not be relitigated on *its* merits, and that the stability of the existing custody arrangement has substantial weight when determining whether the child's custodial "best interest" has changed. Indeed, that is precisely what we have more recently said. In *Burchard* v. *Garay, supra,* 42 Cal.3d 531, 536, we made clear that the "changed circumstances" rule affects the "best interest" test in only two ways: it "changes the burden of persuasion [and] also limits the [cognizable] evidence . . . ." The net effect is simply that the court "should preserve the existing mode of custody unless some significant change in circumstances indicates that a different arrangement would be in the child's best interest." (*Id.* at p. 535.)

In sum, a change in circumstances, including a pending relocation, warrants modification of formal custody or visitation if "significant" enough to indicate that modification would be in the child's "best interest," i.e., *better* for the child, all things considered, than keeping the existing arrangements intact. The parent seeking modification bears the burden of persuasion on this issue, but need not go further and establish the existence of positive *detriment, prejudice, or necessity* which *requires* such a change for the child's welfare.

Depending on the particular facts, the impending relocation of either parent may well represent such a "significant" change in the child's "best interest." As our statutory law makes clear, California's public policy strongly favors the maximum contact between a minor child and *both* of his separated parents. (Fam. Code, § 3020.) This policy must be considered in the "best interest" balance. Doing so does not constitute an undue interference with a parent's personal rights. When one assumes parental responsibilities, his obligations include good faith efforts to foster both his own bond

---

[1]*In re Marriage of Ciganovich, supra,* 61 Cal.App.3d 289, a post-Family Law Act case, cites the predecessor of section 7501 as support for the "general rule [that] a parent having child custody is entitled to change residence [over the other parent's objection] unless the move is *detrimental* to the child. [Citations.]" (61 Cal.App.3d at p. 293, italics added.) Insofar as this statement implies a departure from the usual "best interest" test, it is undermined by the Court of Appeal's failure to consider the intervening Family Law Act provisions discussed above. In any event, the statement is dictum, since the case turned on the corollary rule that modification of custody *may* be ordered when the custodial parent has moved *for the purpose* of frustrating contact between the child and the noncustodial parent.

with the child and the relationship which exists between the child and a coparent. When a custody dispute arises, the court must weigh the child's "best interest" even where that may affect a parent's freedom, travel, lifestyle, and economic interests.

We recently concluded that when a biological parent makes diligent efforts to acknowledge and assume his parental obligations, the other parent may not frustrate his attempts to attain the legal rights of parenthood by preventing his contact with his child. (See *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) Similar concerns may arise when a separated parent who has legal status, and who has maintained a diligent relationship with the child, stands to lose the existing pattern of contact because a unilateral pending relocation will place the child beyond his or her reach. This potential disruption of the parent-child relationship may well mean, in the child's "best interest," that a modification of the existing rules for custody or visitation should occur.

In deciding whether a relocation warrants a modification of custody or visitation, the court is, of course, free to consider the quality of the current relationship between the child and each parent. The degree of diligence a parent has displayed in maintaining voluntary contact with his child is highly pertinent when deciding whether the relocation of either parent justifies a change in the arrangements previously ordered.

Finally, though a parent who seeks to relocate need not prove the move is "necessary" in order to retain or change the award, the reasons for the change in residence have some bearing on the "best interest" analysis. Even if the relocation is not a conscious effort to frustrate parent-child contact, casual motives for moving may indicate the relocating parent's lack of commitment to the child's interest in a continuing bond with both parents. The court may and should take that into account when deciding whether a consequent change in the award is justified.