Filed 2/17/22  Bray v. Watson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FARRAH BRAY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRANDON WATSON,<br><br>    Defendant and Appellant. | D078567<br><br><br>(Super. Ct. No. 18FL014172E) |

APPEAL from an order of the Superior Court of San Diego County, Saba Sheibani, Judge.  Affirmed.

Brandon Watson, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.


Appellant Brandon Watson, the father in this move-away case (Father), challenges the family court's order awarding primary custody of his now three-year-old daughter A. to respondent Farrah Bray (Mother) in conjunction with a family move to North Carolina.  As is increasingly common, both parties in this family law appeal are self-represented, and we

fully appreciate the significant challenges self-represented litigants face in both the trial and appellate courts. These challenges are only compounded by the anxieties and frustrations inherent in a move-away request, where most often there is no "happy" solution. Parents who could otherwise share the custody and companionship of their child while living in the same community cannot both have the same "frequent and continuing contact" with their child when they live on opposite coasts. (See Fam. Code, § 3040, subd. (a)(1).)

Here, Father's brief attempts to argue issues outside the move-away order that is the proper subject of this appeal; Mother has filed no brief at all. Still, we have done our best to identify the arguments that are appropriately before us. Our review of the record convinces us that the family court judge considered the relevant circumstances and made a thoughtful judgment call, knowing that at least one parent would be disappointed, if not distraught. Ultimately, Father has failed to show that the court abused its broad discretion in making Mother the primary custodian after the cross-country move. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother are the parents of three-year-old A. To say they have a contentious relationship with respect to their daughter would be an understatement. According to the family judge, theirs' was "one of my most high-conflict" cases with "multiple restraining orders, multiple RFOs, multiple child welfare reports, multiple police interventions." The judge estimated that in two years, the parents had appeared in her courtroom at least ten times and probably more.

Despite their conflicts, the parents shared custody of A. equally, splitting each week on a 50/50 basis. Along with A., Mother resided with her husband, who was in the Navy, and a five-year-old son (from a prior

2

relationship). At the time of the hearing she was pregnant with another child. Father was unemployed and lived with his mother and other family members.

When her husband received naval orders transferring him from San Diego to North Carolina, Mother as a self-represented litigant filed a move-away request in July 2020 seeking the court's permission to take A. with her along with orders making her the primary custodian. The hearing on Mother's request was originally set for October 20, but the matter was continued to December on the court's own motion because Judge Sheibani "need[ed] more information from both sides." As the judge explained, "I am not going to decide a move away for a two year old who is going out of state with no information."

At the beginning of the continued hearing on December 3, Judge Sheibani explained to the parties that she had reviewed and would consider Mother's declaration that accompanied the original move-away request, the October Family Court Services (FCS) report, Father's declaration filed on October 9, Mother's responsive declaration filed November 16 as well as Father's supplemental declaration filed just before the hearing.[1] The court then heard argument from the parties. Father was represented by counsel; Mother represented herself.

Ultimately, applying a best-interest-of-the-child standard, the court granted Mother's move-away request. Judge Sheibani was particularly concerned with disrupting the sibling relationship between A. and her five-year-old half-brother. Adopting the FCS report and recommendations with

---

[1]  Although Father's designation of record sought to identify all these documents, most were not made part of the Clerk's Transcript. We obtained copies from the superior court and, on our own motion, augment the record to include them. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

some modifications, she entered orders giving primary custody of A. to Mother.

## DISCUSSION

Father appeals the December 3, 2020 order granting Mother's move-away request and making appropriate custody orders.[2]  Transcripts of four hearings are included in the appellate record, and Father attempts to sequentially address all four in his brief.  Two of these—on June 24 and July 28, 2020—have little to do with Mother's move-away request, which was filed on July 16, 2020, but not set for hearing until October.[3]  We therefore focus on events at the remaining two hearings that addressed the move-away request and explain why no abuse of discretion occurred.

---

[2]  Father's notice of appeal, filed on January 7, 2021, indicated his intent to appeal two orders:  (1) an order dated February 13, 2019, granting Mother's petition for a restraining order, and (2) the December 3, 2020 order granting Mother's move-away request.  On April 13, 2021, we dismissed Father's appeal in part as untimely to the extent it sought to challenge the 2019 order granting a restraining order.

[3]  To the extent Father is attempting to argue that the proceedings in June and July demonstrate the judge's bias against him, we find no reasonable basis to draw that inference.  The June 24 hearing addressed Mother's request to modify the current visitation orders that were attached to the parties' mutual restraining orders.  The court initially found that Father had notice of the hearing but failed to attend, and so proceeded in his absence.  Even so, Judge Sheibani repeatedly questioned Mother's reporting of events as well as her contentious behavior.  Although the court modified the orders as Mother requested , one month later at Father's request it set aside the June 24 orders based on a finding that he was unable to participate in the June hearing due to technological issues with the court's video hearing platform.  Judge Sheibani then entered new custody and visitation orders, setting a schedule that returned to the status quo and gave each parent roughly equal time.

At the October 20 hearing, the court took no action on Mother's request. Instead, it continued the hearing to December and advised both parties to provide additional information in supplemental filings. Father contends that by granting a continuance to allow the presentation of additional evidence, the family court demonstrated bias in favor of Mother. But he overlooks that Judge Sheibani requested additional information from *both parties*. She also made clear that her primary concern "is for the child" because she did not want to make new custody orders without sufficient information. Even assuming the judge accommodated Mother's self-represented status by granting the continuance, this was appropriate under the circumstances to facilitate Mother's right to be heard and ensure a well-grounded decision. (Cal. Code of Jud. Ethics, Advisory Com. com. to canon 3(B)(8) ["when a litigant is self-represented, a judge has the discretion to take reasonable steps, appropriate under the circumstances and consistent with the law and the canons, to enable the litigant to be heard"].)

With respect to the December 3 hearing, Father catalogs various facts and circumstances he believes demonstrate the court should have reached a different conclusion. He complains that Mother did not complete an anger management class or mandated therapy. He points to child welfare reports that could not be substantiated and accuses Mother of dishonesty. In his view, he provided "my source of income, a vastly superior support system here in San Diego and in neighboring cities to support [A.] if I needed it, a stable home with no violence or unhealthy individuals presents [*sic*] and myself a father to [A.] who has been there every day of her life other than the times I was forced out due to [Mother] illegally withholding [A.]." Unable to understand how Judge Sheibani could side with Mother, Father concludes that the only possible explanation is that the court was biased against him.

5

We do not doubt the sincerity of Father's beliefs, but his perspective is not an objective one. Far from reflecting bias in favor of or against one party, the court's comments at the hearing indicate evenhanded criticism of both parents on several levels. Judge Sheibani expressed "concerns regarding either parents' [*sic*] ability to parent this child." Although noting there had been "no substantiated allegations of child abuse by either parent," she pointed out that both parties had engaged in domestic violence. Most troubling to the court was the parents' inability to effectively coparent their daughter and their respective roles in creating a high-conflict relationship. As the judge explained, "It's not one or the other. Both of you[,] [b]oth of you have acted the same way throughout this case."

In the end, acknowledging it was "a difficult decision for me to make," the court gave primary custody of A. to Mother. Particularly important to the judge was maintaining "continuity of the sibling relationship" and the "strong bond" that A. had formed with her half-brother. The court expressed concern that "removing [A.] from her sibling . . . might be detrimental to her as a two-year-old." Significantly, Father does not mention this factor in arguing why the court's decision was wrong. And while he takes issue with the ruling based on his belief that Mother repeatedly violated prior custody orders, Judge Sheibani expressly warned Mother that its orders could be changed at a later date if the court concluded she was not fostering A.'s relationship with Father.

Our role as an appellate court is a limited one. We review custody orders not to determine whether we agree with them or would have reached the same conclusion. Rather, we will disturb a family court's order only if we conclude that it abused its discretion, understanding that the "court has 'the widest discretion to choose a parenting plan that is in the best interest of the

child.' " (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31 (*Burgess*), quoting Fam. Code. § 3040, former subd. (b), now subd. (d).)  Discretion is abused only if no judge "could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*Burgess,* at p. 32.)

In this case, Judge Sheibani thoughtfully considered a difficult set of circumstances and reached a reasonable decision on the facts presented. Although the judge knew her ruling would not please both parents, she nonetheless tried to explain her reasoning in a way both parents could understand.  This is precisely what we expect judges to do.  There was no abuse of discretion, and our record reflects that Father received a fair and impartial ruling, albeit one he did not agree with.

DISPOSITION

The order on Mother's move-away request is affirmed.  Father shall bear his own costs on appeal.

DATO, J.

WE CONCUR:


AARON, Acting P. J.


GUERRERO, J.

7