Filed 12/28/23  Marriage of Guldseth CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of ALISON GULDSETH and DAVID GULDSETH. | D081206 |
| ALISON GULDSETH, Respondent, v. DAVID GULDSETH, Appellant. | (Super. Ct. No. 18FL000052N) |

APPEAL from an order of the Superior Court of San Diego County, Victor M. Torres, Judge.  Affirmed.

The Appellate Law Firm, Aaron Myers and Mark Kuntze, for Appellant.

Alison Guldseth, in pro. per., for Respondent.

## INTRODUCTION

Alison Guldseth (Mother), who had sole legal and primary physical custody of her two minor children, sought a family court order to relocate with the children to Tennessee.  David Guldseth (Father) contends the court

abused its discretion in granting the move-away request, in two ways:  (1) it failed to give appropriate weight to Mother's testimony that the move was motivated, in part, by her desire to lessen the children's time with Father and (2) it "misapprehend[ed]" the inquiry into the children's interest in stability and continuity of the current custodial relationship.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

After nearly 20 years of marriage and five children, Mother filed a petition to dissolve her marriage to Father on January 3, 2018.[1]  (*Guldseth I*, *supra*, D077308.)  On December 19, 2019, following a six-day trial on custody of the three still-minor children, the family court issued a final custody determination.[2]  (*Ibid.*)  The court awarded joint legal custody with primary physical custody of the eldest of the three children to Father and primary physical custody of the youngest two, J.G. and D.G., to Mother.  Each parent was granted visitation with the other child/children on alternating weekends, and at certain other times, depending on the child.  At the end of the school year, Father's time with J.G. and D.G. would step up to an equal timeshare with Mother.  (*Ibid.*)

On March 10, 2020, the family court eliminated Father's step-up plan, finding a significant change of circumstances based on a mental health

---

[1]    We draw the relevant background facts from our prior opinion *In re Marriage of Guldseth* (Mar. 2, 2023, D077308 [nonpub. opn.] (*Guldseth I*)), in which Father appealed from multiple final and/or postjudgment orders of the family court arising out of the dissolution of the parties' marriage.  (*Ibid.*)  There we affirmed each of the challenged rulings.

[2]    Once a final judicial custody determination is in place, a party seeking to modify a permanent custody order can do so only if he or she demonstrates a significant change of circumstances justifying a modification.  (See *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255; *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 37 (*Burgess*).)

2

counselor's determination that J.G. and D.G. were unhappy with having increased time with Father.[3] (*Guldseth I, supra,* D077308.) The court also found the eldest minor child's involuntary disenrollment from school and lack of consistent therapy constituted a significant change of circumstances to warrant further modification of the custody order, but declined to change the child's primary physical custody from Father to Mother "out of concern that doing so would be even more detrimental to the child's mental health." (*Ibid.*) A judgment of dissolution was entered May 14, 2020, incorporating the modified December 19, 2019 final custody determination.

On May 17, 2021, the family court modified custody again following a hearing on Father's request for order seeking a change in the custody orders.[4] Father was awarded sole legal and primary physical custody of the eldest minor child, who was then about six months shy of 18. Mother was awarded sole legal and primary physical custody of J.G. and D.G. Father's parenting time with the two younger children was every Tuesday and Thursday from 3:00 p.m. to 7:00 p.m. and alternate weekends from Friday to Sunday. Father was also ordered to participate in conjoint therapy with J.G.

---

[3]     Father appealed the family court's March 2020 order modifying the December 2019 final custody order. In *Guldseth I*, we rejected his contention that the court had abused its discretion and affirmed the custody order. (*Guldseth I, supra,* D077308.)

[4]     Father filed a notice of appeal on June 24, 2021, challenging the court's May 17, 2021 custody order. We dismissed this appeal, case number D079338, for procedural deficiencies on March 25, 2022 and denied Father's subsequent motion to reinstate the appeal for lack of good cause on July 18, 2022. On our own motion, we take judicial notice of certain records from D079338, including: Father's March 12, 2021 request for order modifying custody; the family court's May 27, 2021 minutes; and Mother's October 27, 2021 request for move-away order. (Evid. Code, § 452, subd. (d)(1).)

and D.G., at the discretion of the children's therapist and with the children's input, "to address issues related to parent-child relationship, conflict resolution, and effective communication." These were the custody orders in effect when Mother sought the move-away order at issue in this appeal.

On October 27, 2021, while Father's numerous appeals were pending in *Guldseth I*, Mother filed a request for order seeking to relocate to Johnson City, Tennessee with J.G. and D.G. After an evidentiary hearing in which eight witnesses, including the parties, testified, the family court granted Mother's request. Father appeals,[5] asserting the trial court abused its discretion in doing so.

DISCUSSION

I.

*Legal Principles Governing A Move-Away Request*

As the family judge here acknowledged, move-away orders are one of the more difficult decisions courts are asked to make, particularly where, as here, they involve equally loving parents. They require family courts to navigate the irreconcilable tension between a parent's desire to move with the child, the child's need for stability, and the interests of the child in

---

[5] Father filed notices of appeal on October 6, 2022 and November 3, 2022 from the court's October 4, 2022 minute order granting Mother's request for a move-away order. The notices of appeal were premature because the minute order directed Mother's attorney to prepare a final order. (See *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1170 ["[W]hen the trial court's minute order expressly indicates that a written order will be filed, only the written order is the effective order"].) However, the court entered a Findings and Order After Hearing on November 10, 2022. Thus, we treat the premature appeals as being from the subsequent appealable order. (Cal. Rules of Court, rule 8.104(d); *Brown v. County of Los Angeles* (2014) 229 Cal.App.4th 320, 322, fn. 1.) Both notices of appeal have been consolidated under case number D081206.

maintaining regular contact with both parents. (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1101 (*LaMusga*).) Because move-away cases involve "heart-wrenching circumstances," our Supreme Court has emphasized that "this area of law is not amenable to inflexible rules" and "we must permit our superior court judges . . . to exercise their discretion to fashion orders that best serve the interests of the children in the cases before them." (*Ibid*.)

We reverse the family court's order only where the appellant has shown the court has abused its discretion by unreasonably concluding that its order was in the best interest of the child. (*Burgess, supra*, 13 Cal.4th at p. 32.) We presume the move-away order is correct. (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 93–94.) We do not reweigh the evidence or assess the credibility of witnesses; instead we defer to the court's adjudication of the facts. (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1246.) And because the determination of "[w]hat constitutes the best interest of a child presents an inherently factual issue" (*Guardianship of A.L.* (2014) 228 Cal.App.4th 257 268), we evaluate the court's ultimate determination with cautious restraint. The burden is on Father, as the appellant, to establish an abuse of discretion. (*In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1473–1474.)

Relevant here, when a parent who has sole physical custody under an existing judicial custody order seeks to relocate a child, he or she " 'has the right to change the residence of the child, subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child.' " (*Burgess, supra*, 13 Cal.4th at p. 29,quoting Fam. Code,[6] § 7501.) Because of this presumptive right to change the child's residence, the custodial parent bears no burden of establishing that the planned move is " 'necessary.' " (*Burgess*, at p. 29; *LaMusga, supra*, 32 Cal.4th at p. 1078.)

---

[6] All further undesignated statutory references are to the Family Code.

The presumption under section 7501 shifts the burden to the noncustodial parent to show the move would cause detriment to the child, rendering it " 'essential or expedient' " for the child's welfare that there be a custody change.  (*LaMusga*, *supra*, 32 Cal.4th at pp. 1088–1089; *Burgess*, *supra*, 13 Cal.4th at p. 38.)  The likely impact of the move on the noncustodial parent's relationship with the child is relevant in determining whether there is detriment and, while it may be sufficient to justify a change in custody when considered with all relevant factors, detriment alone does not mandate a change in custody.  (*LaMusga*, at p. 1095.)  Rather, it requires the family court to perform "the delicate and difficult task" of determining whether a change in custody is in the child's best interests.  (*Id.* at p. 1078.)

The burden of demonstrating a change in circumstance requiring a change of custody is on the noncustodial parent.  (*Burgess*, *supra*, 13 Cal.4th at p. 37.)  " '[I]n view of the child's interest in stable custodial and emotional ties, custody lawfully acquired and maintained for a significant period will have the effect of compelling the noncustodial parent to assume the burden of persuading the trier of fact that a change [in custody] is in the child's best interests.' " (*Ibid.*, quoting *Burchard v. Garay* (1986) 42 Cal.3d 531, 536 (*Burchard*).)  Otherwise, the court " 'should preserve the established mode of custody.' " (*Burgess*, at p. 38, quoting *Burchard*, at p. 535.)

In determining whether to modify an existing custody order in light of the custodial parent's request to move the child's residence, the family court is required to consider what have become known as the *LaMusga* factors.  (*LaMusga*, *supra*, 32 Cal.4th at p. 1101.)  Although not an exhaustive list, these factors include:  "the children's interest in stability and continuity in the custodial arrangement; the distance of the move; the age of the children; the children's relationship with both parents; the relationship between the

6

parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests; the wishes of the children if they are mature enough for such an inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently are sharing custody." (*Ibid.*) Because there are no bright line rules, a court should evaluate each case "on its own unique facts." (*Burgess*, *supra*, 13 Cal.4th at p. 39.)

II.

*The Trial Court Did Not Abuse Its Discretion in Granting Mother's Move-Away Request*

Father does not claim there is insufficient evidence to support the family court's findings and order. Rather, he contends the court abused its discretion in allowing J.G. and D.G. to move to Tennessee with Mother, in two ways: (1) the court "ignored" Mother's testimony she was motivated to move, in part, because she wanted the children to spend less time with Father and thus the court failed to give appropriate weight to Mother's asserted bad faith; and (2) the court "misapprehend[ed]" or "misapplied" the *LaMusga* inquiry into the children's interest in stability and continuity of the current custodial background by prioritizing J.G.'s expressed desire to move away from Father. We are not persuaded.

Based on the record before us, the family court followed the appropriate procedures and correctly applied the appropriate standards in granting Mother's move-away request. Father acknowledges the court correctly began its analysis with the presumption that Mother, as the parent with sole

7

physical custody[7] of the children, had the right to change the children's residence. (§ 7501; *Burgess*, *supra*, 13 Cal.4th at p. 29.) The presumption required Father to make the initial showing that the move would cause detriment to the children which would require the court to reevaluate the children's custody. (*LaMusga*, *supra*, 32 Cal.4th at p. 1078.)

Father attempted to make this showing by claiming Mother alienated him and withheld the children from him. He also alleged Mother had a history of domestic violence. However, there was contradictory testimony regarding these claims. The family court found that there was no credible evidence that Mother would refuse to facilitate contact with Father, and there was no documented finding of domestic violence.

Next, the court carefully considered *each* of the *LaMusga* factors and concluded, on balance, that Father had not shown that it would be in the children's best interests to transfer physical custody from Mother to Father. (*LaMusga*, *supra*, 32 Cal.4th at p. 1101.) In balancing the various factors, the court concluded several of them were neutral, including the minors' ages, the support of extended family in both locations, and the distance of the move, which the court found was not "insurmountable" by someone (like Father) who earns $353,000 a year. The court also found that the parents' relationship and communication was "extremely poor" and "contentious" to be neutral factors.

---

7    The Family Code provisions governing custody of children do not use the term " 'primary physical custody.' " (*LaMusga*, *supra*, 32 Cal.4th at p. 1081, fn. 1.) There is only " 'sole physical custody' " or " 'joint physical custody.' " (*Ibid.*) And " '[s]ole physical custody' " means "a child shall reside with and be under the supervision of one parent, subject to the power of the court to order visitation." (§ 3007.) Because J.G. and D.G. resided with Mother and had visitation with Father, Mother had sole physical custody of the children. Father does not challenge this fact.

The family court found several other factors weighed in favor of granting the request. Addressing the children's interest in stability and continuity in the custodial arrangement, the court noted the children's desire to move. The court expressed concern that J.G.'s visits with Father were so she could go shopping, and the relationship appeared to "center around material gifts" instead of being "honest, open [and] caring when other people aren't watching." The court also found that Father was not child-focused; he was "self-focused." Father's main concern was to "look like the good guy and not the bad guy, to the detriment of his relationship with his children." The court found that the children's "difficulties" were "due to trauma and stress," and those mental health concerns weighed in favor of the move.

The court recognized that D.G. was "clearly bonded" with Father and suggested that J.G. was "more bonded than we see here" and the relationship had been "better lately." However, the court found the recent improvement in the relationship with J.G. to be a "small comfort" because "it couldn't have got[ten] much worse." It noted that there are "various online methods for the children to retain a bonded and continuing relationship with Father and their brothers despite a move to Tennessee."

Ultimately, the court found the move's impact on the children would be "a positive one." There were no concerns about the school in Tennessee, health care, or the availability of extra-curricular activities.

The evidence supporting the court's findings on these factors is not disputed by Father. Instead, Father complains that the court did not properly consider Mother's motivation for the move-away, which he argues was to limit contact between him and the children. He contends the court should have concluded that a move-away would create additional disruption

9

in his relationship with the minor children, justifying a denial of Mother's request. We disagree.

The court considered Mother's motivation. It did not find credible evidence that Mother would refuse to facilitate contact with Father. It weighed the evidence about the children's preferences and the state of their relationships with Father, including J.G.'s ongoing refusal to attend visits with Father and Mother's testimony that the move would alleviate some of the daily stress of Father's visitation requests. It also considered various methods for the children to retain a bonded and continuing relationship with Father.

The court also did not "misapprehend" or "missappl[y]" the *LaMusga* inquiry into the children's interests in stability and continuity. It carefully considered each of the factors. The court is entitled to give whatever weight it deemed appropriate to any of the factors in determining the children's best interests. (*LaMusga, supra,* 32 Cal.4th at p. 1093 ["The weight to be accorded to such factors must be left to the court's sound discretion"].) Discretion is only abused if no judge "could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*Burgess, supra,* 13 Cal.4th at p. 32.) Our high court affirms what the family court concluded: " 'the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—*weigh heavily* in favor of maintaining ongoing custody arrangements.' " (*LaMusga,* at p. 1093, quoting *Burgess,* at pp. 32–33, italics added.)

In sum, we find no abuse in the court's granting of Mother's move-away request.

10

## DISPOSITION

The November 10, 2022, order is affirmed.  In the interests of justice, each party is to bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278, subd. (a)(5) .)

DO, J.

WE CONCUR:


DATO, Acting P. J.


BUCHANAN, J.