Filed 3/27/24  In re N.G. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re N.G., a Person Coming Under the Juvenile Court Law. | |
| | D082975 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ004759) |
| v. | |
| J.G., | |
| Defendant and Appellant, | |
| J.T., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Alexander M. Calero, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant, J.G.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Respondent, J.T.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Natasha C. Edwards, Deputy County Counsel, for Plaintiff and Respondent.

MEMORANDUM OPINION

J.G. (Father) appeals from the juvenile court's September 29, 2023 custody order concerning his child, N.G. His sole contention is that the court abused its discretion by reducing the frequency of his supervised visits. We find no abuse of discretion and affirm the order.

As we previously detailed the factual background of this case in affirming a prior ruling (*In re N.G.*, (Jan. 20, 2023, D080966) [nonpub. opn.]) and because we resolve this appeal by memorandum opinion, we do not elaborate on the factual or procedural background beyond that required for our analysis. (See *People v. Garcia* (2002) 97 Cal.App.4th 847, 851–854.)

I.

The San Diego County Health and Human Services Agency (the Agency) filed a juvenile dependency petition in April 2022, because (1) N.G. "was exposed to a violent confrontation" between Father and N.G.'s mother, J.T. (Mother), (2) "[t]he parents ha[d] failed to cooperate with multiple safety plans," (3) Father had "a prior history of verbal, physical[,] and emotional abuse toward" Mother, and (4) "both parents ha[d] a history of substance abuse which m[ight] impact their functioning, relationship[,] and care" of N.G. The juvenile court detained N.G. and assumed jurisdiction over him.

Eventually N.G. was returned to Mother with family maintenance services. She obtained a restraining order against Father. Five social

workers also obtained restraining orders against Father due to his frequent threats and inappropriate messages.

During this time, the court granted Father liberal supervised visitation two times per week. The Agency monitored a two-hour weekday visit and a paternal aunt, A.F., supervised six-hour Saturday visits when she was available. Initially, A.F. oversaw visits every Saturday, but because she had to drive over an hour each way and needed more weekend time to herself, she reduced the visits to one Saturday per month. All parties agreed Father had positive visits with N.G., consistently arrived prepared, and engaged with him appropriately.

On September 29, 2023, the juvenile court convened a contested family maintenance review hearing. A social worker testified via a stipulation read into the record that, among other things, Father is empathetic to N.G. and interacts positively with him, and N.G. is happy to see Father and seems to enjoy their time together. A.F. then testified that she would continue to supervise one Saturday visit per month and could increase the duration to eight hours. Another paternal aunt, A.G., agreed to start supervising one additional eight-hour visit per month. Finally, Father took the stand and described his visits with N.G. as "[m]agical, amazing." He said he would like to see his son every day.

The Agency requested the court place N.G. with Mother, terminate jurisdiction, and order supervised visits with Father. Father's attorney requested daily unsupervised visits or, alternatively, eight-hour supervised visits every other Saturday.

In making its ruling, the court began by acknowledging that Father had positive visits with N.G. and clearly loved his son. But given Father's lack of progress in services and difficulty in obtaining services due to his own

conduct, the court ordered that visitation remain supervised.  The court then awarded sole legal custody to Mother, ordered "a minimum of one visit per month" of six hours in length "at a minimum" for Father, and terminated jurisdiction.

## II.

On appeal, Father argues the juvenile court abused its discretion by reducing his supervised visitation to a minimum of one six-hour visit per month.  We disagree.

When the juvenile court terminates dependency jurisdiction, it may issue a custody and visitation order, often called an "exit order."  (Welf. & Inst. Code, § 362.4, subd. (a); *In re T.S.* (2020) 52 Cal.App.5th 503, 513.)  The court has broad discretion when fashioning a custody and visitation order and focuses on the best interests of the child.  (See *id.* at p. 514.)  This is because "[t]he juvenile court has a special responsibility to the child as *parens patriae* and must look to the totality of the child's circumstances when making decisions regarding the child."  (*In re Chantal S.* (1996) 13 Cal.4th 196, 201 (*Chantal S.*).)

We review custody and visitation orders under "the deferential abuse of discretion test."  (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.)  That test requires us to determine "whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child."  (*Ibid*.)  We will "uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked."  (*Ibid*.)  We will not find an abuse of discretion unless we conclude that no reasonable judge would have made the same decision under the circumstances, viewing the evidence most favorably in support of the decision.  (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 104.)

4

In this case, Father contends it is in N.G.'s best interest to maintain, at a minimum, the existing frequency and duration of their visits. As an initial matter, Father requests more supervised visitation on appeal than he requested below. At the hearing, Father only asked for eight-hour visits every other Saturday if they had to remain supervised. On appeal, he first requests to maintain the existing frequency and duration of visits, which he claims was twice per week. Then, in the conclusion of his opening brief, he asks that we remand with directions for the family court to authorize either unlimited visits or a minimum of one weekly eight-hour visit. Generally, a party is precluded from presenting an issue on appeal that it did not adequately raise below. (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 419.) Because Father did not afford the trial court an opportunity to address these requests for greatly expanded supervised visitation, we will not consider them for the first time here as we deem them forfeited. (*In re N.R.* (2017) 15 Cal.App.5th 590, 598.)

Furthermore, the record does not support Father's claim that at the time of trial, he was visiting N.G. twice weekly. The court must evaluate *recent* evidence regarding visitation in determining whether substantial evidence exists to support an order reducing visitation when jurisdiction is terminated. (See *In re Elizabeth M.* (2008) 158 Cal.App.4th 1551, 1558.) Most recently, the Agency was monitoring one two-hour weekday visit per week while A.F. had reduced her supervision to one six-hour Saturday visit per month. Although it is undisputed that the Agency could no longer supervise weekly visits upon termination of jurisdiction, there was no evidence of any alternative means to facilitate two-hour weekday visits.

Father also provides no legal authority on appeal suggesting a juvenile court abuses its discretion by considering the feasibility of visitation in

crafting a visitation order in the best interests of the child. The court acknowledged Father's positive relationship with his son and found it in N.G.'s best interest to continue to see him. But the law does not require the visitation order to be made in a vacuum. Rather, when making decisions regarding the best interests of the child, the court "must look to the *totality* of [the] child's circumstances" (*Chantal S., supra,* 13 Cal.4th at p. 201, italics added) and should consider evidence of the family's circumstances that is relevant to the terms of the visitation order (see *In re T.H.* (2010) 190 Cal.App.4th 1119, 1124). Here, N.G. lived in a confidential location because Father's unwillingness to address the domestic violence that brought N.G. under the court's jurisdiction, and his failure to appear for his mental health assessment, resulted in Mother maintaining an active restraining order against him. This meant Mother could not supervise visits and Father could not pick N.G. up from Mother's home.

Because of these challenges, the court considered other options to promote N.G.'s best interests. For example, the Agency supported Father utilizing a professional visitation monitor even though Father did not express an inclination or financial ability to rely on these services. However, as the court noted, Father's ongoing threats to social workers made it difficult for him to obtain services and it is reasonable to infer that this conduct might also make it challenging for him to secure professional visitation monitors willing to work with him. Although Father's sisters expressed willingness to help, they only offered to supervise, at most, one visit per month each of up to eight hours per visit. Father did not propose an alternative means of facilitating the visits should one of them be unavailable. Thus, there was nothing arbitrary (see *In re Stephanie M.* (1994) 7 Cal.4th 295, 318) about the juvenile court's practical order setting the *minimum* required visitation at

the level of family monitored visitation time Father currently was receiving, with the expectation that A.G. would begin providing an additional day and A.F. would try to increase her time.

Accordingly, we find no abuse of discretion in the court's visitation order.

III.

We affirm the September 29, 2023 order.

CASTILLO, J.

WE CONCUR:


IRION, Acting P. J.


KELETY, J.