Filed 8/21/24  Herrick v. Trevino CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOHN HERRICK et al., | D082470 |
| Petitioners and Respondents, | |
| v. | (Super. Ct. No. 37-2015-00012139-PR-GP-CTL) |
| VANISHA TREVINO, | |
| Objector and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Julia C. Kelety, Judge.  Affirmed.

Decker Law, James D. Decker and Griffin R. Schindler for Objector and Appellant.

Lopez & Wilmert, Larisa A. Wilmert and Darin J. Wilmert for Petitioners and Respondents.

Vanisha Trevino (Vanisha), the biological mother of minor child S.T., appeals an order granting a petition to move out of state brought by S.T.'s legal guardians, John Herrick (John), Sharlene Herrick (Sharlene), and Athena Herrick (Athena) (collectively, the Herricks).  Vanisha argues that the probate court erred by applying the "best interests of the ward" standard

from Probate Code section 2352, subdivision (a), because the court should have applied the standard from *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 (*LaMusga*), a case decided under Family Code section 7501. Vanisha further argues that even under the Probate Code's standard, the court abused its discretion by finding that it was in S.T.'s best interests to remain with the Herricks when they moved to Montana.

We conclude that even assuming any error in failing to apply the Family Code standard, it would be harmless because it is not reasonably probable that the outcome would have been different. We further conclude that the court did not abuse its discretion in granting the Herricks' petition under the Probate Code's standard. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*A. The Guardianship Petitions*

Vanisha met Athena when they were classmates together in San Diego, California. Vanisha gave birth to S.T. in June 2012. Since her birth, S.T.'s biological father has been absent from her life. Vanisha stayed with the Herricks on and off during the pregnancy, and three to four nights a week after S.T. was born, even though Vanisha was technically living with her mother, Chanida, throughout that time. In September 2013, Vanisha and S.T. started living full-time with the Herricks. During that time, Sharlene took care of S.T. during the day and Athena took care of her in the evenings. In December 2013, Vanisha moved out of the Herricks' home and moved with S.T. to Las Vegas to look for work.

In June 2014, Athena and Sharlene traveled to Las Vegas at Vanisha's request to bring S.T. back to San Diego because Vanisha was struggling with her living situation. S.T. lived with the Herricks for 10 months afterwards, and Vanisha visited every six weeks for about a week at a time. In 2015,

2

Vanisha moved back to San Diego and the Herricks petitioned to be S.T.'s temporary guardians. Chanida also petitioned for guardianship, but later withdrew her petition. At the petition hearing, Vanisha told the court that she did not want custody of S.T., and the court appointed the Herricks as temporary guardians. The court also allowed Vanisha and Chanida to have visitation with S.T. every Monday morning through Tuesday afternoon.

In 2016, the Herricks petitioned for and obtained legal guardianship of S.T. over Vanisha's objection. The probate court found that although Vanisha had a stable job and housing, and although she had a good relationship with S.T., Vanisha's "historical pattern of coming and going and leaving [S.T.] with different caretakers" made the court less confident that she was "committed to being a full-time mother." The court also did not "believe [Vanisha] would be able to manage without housing provided by others." The court was concerned that Vanisha's housing was dependent on Chanida, with whom Vanisha had a "troubled relationship" and who had not been "a reliable source of support."

As for the Herricks, the court found that they had assumed the role of parents and had provided day-to-day care and a stable residence for S.T. for over half of her life. The court concluded that awarding custody to the Herricks would be in S.T.'s best interests, and that giving Vanisha custody would be detrimental. It kept in place all prior visitation orders and further ordered that S.T.'s residence not be moved out of San Diego County without advance written notice to Vanisha or her written consent for the move.

After the Herricks became S.T.'s legal guardians, they continued to provide for her physical, educational, and financial needs for several years. S.T. calls Sharlene and John her grandparents, and she calls Athena "mom." Sharlene prepares S.T.'s breakfast, Athena or Sharlene drops her off at

3

school, Sharlene picks her up from school, and John oversees S.T.'s homework during the week. Athena took care of S.T. after school before Athena moved to Lemoore, California, and the Herricks all attended S.T.'s parent-teacher conferences. Athena and Sharlene usually take S.T. to routine medical appointments. S.T. is also close to the Herricks' extended family.

During the Herricks' guardianship, Vanisha rarely provided S.T. with any clothing, school supplies, or other personal items, and seldom participated in S.T.'s school activities or medical appointments. Vanisha also never provided the Herricks with money to support S.T. and did not ask for S.T.'s phone number or a way to contact her directly. Vanisha understood that the Herricks had legal authority to make decisions regarding S.T.'s welfare, and she said she felt too "intimidated" by the Herricks to seek out more involvement in S.T.'s life. But Vanisha rarely missed her scheduled visitations with S.T., and they maintained a positive relationship.

B. *The Herricks' Petition for Adoption*

After being S.T.'s primary caregivers for several years, the Herricks petitioned to adopt S.T. in 2021, but their petition was denied in February 2022. The Herricks described S.T. after receiving the news as "despondent and inconsolable." Shortly after their adoption petition was denied, the Herricks formally requested financial support from Vanisha, but Vanisha never responded.

C. *The Underlying Petitions*

In April 2022, the Herricks petitioned to move their residence from California to Montana, citing John's upcoming retirement and a lower cost of living. Vanisha objected to their petition and filed her own petition to terminate guardianship. The probate court heard testimony as to Vanisha's

4

petition first, and then the Herricks' petition, over the course of three days in February and March 2023.

    1. <u>Vanisha's Petition to Terminate Guardianship</u>

Vanisha testified that she had stable, full-time work and a salaried position as a nanny. She had her own car, was engaged to be married, and had at times purchased clothing, school supplies, and toys for S.T. She described her relationship with S.T. as "super bonded," and said that S.T. has also formed relationships with Vanisha's extended family and friends. Vanisha disputed that S.T. was despondent after the Herricks' adoption petition was denied.

Vanisha's employer described her as "extremely hard working," and observed that she had a "very affectionate" relationship with S.T. Although S.T. previously did not have her own room in the condominium unit Vanisha shares with Chanida, Vanisha's sister moved out, which allowed for S.T. to have her own room during visitations starting in December 2022. Vanisha sleeps in Chanida's living room, which she has used as a bedroom since 2015.

If she regained custody, Vanisha planned to allow S.T. to finish the school year at her current school in California, and then start the following academic year at a school in Allied Gardens, a neighborhood in San Diego. Vanisha also hoped to get married and move out of Chanida's unit, but she had no specific date for the marriage and no concrete plans for housing.

Vanisha's family members, including Chanida, testified in support of her petition. Chanida described teaching S.T. about their Chinese, Thai, and Mexican heritage. Chanida and Vanisha live in a unit owned by Chanida's aunt, and aside from paying association fees, Chanida does not pay for rent, utilities, insurance, or property taxes. Vanisha also has no lease with Chanida and generally does not pay for rent or utilities. Chanida expects

that her aunt will allow her to inherit the unit, but their arrangement is informal.

S.T., who was 10 years old at the time of trial, addressed the probate court and stated that she did not want to move to Montana and wanted to live with Vanisha instead. She wanted to stay in San Diego with her friends because Montana is "pretty plain," there is not much to do there, and she would rather stay at her current school. She said her preference would be to live with Vanisha, but still have occasional visitation time with the Herricks. The Herricks were surprised that S.T. expressed a preference to live with Vanisha.

2. <u>The Herricks' Petition to Move Out of State</u>

John testified that his company recently began offering a remote work option, which would allow John and Sharlene to move with S.T. to Kalispell, Montana, and decrease their cost of living before John's retirement. Athena also intends to move to Kalispell in a couple of years. In addition to affordability, John cited the changing of seasons, opportunities to be outdoors, friends, and a church they liked in Kalispell as reasons for the move. John believed, based on his research, that the area has high-quality schools with extracurriculars for S.T. to participate in. He said Vanisha would be welcome to stay with them in Montana during visits, and John and Sharlene were open to S.T. having in-person visitation with Vanisha in San Diego during four weeks of summer and alternating holidays. Vanisha could also FaceTime with S.T. any time before 8:00 p.m. on school nights, and later on weekends. The Herricks acknowledged that moving away from San Diego would be difficult for S.T., but they were hopeful that she could make friends and adapt quickly to her new life.

6

Vanisha testified that moving to Montana with the Herricks would be harmful to S.T. because it would diminish Vanisha's bond with her and make communication more difficult for all the parties. She also expressed concerned that S.T. would not be able to learn about her identity and culture because Kalispell is a predominantly White community.

D. *Probate Court's Rulings*

After hearing testimony, the probate court denied Vanisha's petition to terminate the Herricks' guardianship. The court cited Probate Code sections 1601 and 1610, which provide that determining whether to terminate a guardianship depends on what is in the child's best interest, which is defined as being "raised in a permanent, safe, stable, and loving environment." (See Prob. Code, §§ 1601 & 1610, subd. (a).) The court noted that S.T. had been in the Herricks' stable care for most of her life, and that S.T. was bonded to them. The court found Chanida's and Vanisha's testimony not credible, specifically regarding Vanisha's reasons for not requesting more visitation time. Although it took into consideration S.T.'s statements, the court noted that as a 10 year old, S.T. likely did not understand how terminating the guardianship would dramatically impact her life. The court therefore found it would not be in S.T.'s best interests to terminate the Herricks' guardianship.

In a written order issued after trial, the court granted the Herricks' petition to move S.T. to Montana with them. The court noted that Probate Code section 2352 requires guardians to obtain the court's permission before moving a ward's residence out of state, but that the statute is silent as to what the court should consider when ruling on such a petition.[1] Rather than

---

[1] Probate Code section 2352, subdivision (a), provides: "The guardian may establish the residence of the ward at any place within this state

rely on Family Code section 7501 governing move-away orders in the family law context, the court concluded that family law principles do not apply to probate guardianship. The court observed that Probate Code section 2352 does not reference or incorporate Family Code section 7501; that Probate Code section 2352, subdivision (a), allows a guardian to move anywhere within the state without court permission, in contrast to family law provisions; and that here, unlike in the family law context, the court was not considering a change in custody as a result of the proposed move. The court then decided to apply the standard laid out in Probate Code section 2352, subdivision (a), namely that the residence should be "the least restrictive appropriate residence that is available and necessary to meet the needs of the ward, and that is in the best interest of the ward."

Applying that standard, the court determined that granting the Herricks' petition would be appropriate because continuing to live in San Diego would impose financial hardship on the Herricks, and the evidence showed that Kalispell is a suitable place to raise children. Regarding S.T.'s best interests, the court noted that in denying Vanisha's petition to terminate the guardianship, the court had already concluded it was in S.T.'s best interests to remain in the Herricks' custody—whether they reside in California or Montana. The court was "mindful that the relationship" between S.T. and Vanisha is important, but gave weight to evidence showing

without the permission of the court. The guardian shall select the least restrictive appropriate residence that is available and necessary to meet the needs of the ward, and that is in the best interests of the ward." Subdivision (c) provides in relevant part: "If permission of the court is first obtained, a guardian or conservator may establish the residence of a ward or conservatee at a place not within this state."

that the parties would follow the court's visitation orders to help maintain their relationship. The court ordered that until the Herricks move to Montana, the current visitation schedule should remain in effect. After the move, the court ordered that S.T. be allowed to visit Vanisha in San Diego for one week during either Thanksgiving or Christmas as selected by Vanisha, and for four summer weeks, with dates selected by the Herricks. The court also allowed for Vanisha to video call S.T. in Montana before 8:00 p.m. on Sundays and Wednesdays.

## DISCUSSION

On appeal, Vanisha does not challenge the probate court's denial of her petition to terminate the Herricks' guardianship. She only contends that the court erred in granting the Herricks' petition to move out of state because (1) it applied the wrong legal standard by relying on Probate Code section 2352, subdivision (a), instead of the Family Code and *LaMusga*; and (2) even if the standard in the Probate Code was appropriate, the court abused its discretion in determining that it was in S.T.'s best interests under that standard to move to Montana with the Herricks. We conclude that even if the trial court should have applied the Family Code's move-away analysis as Vanisha requested, it is not reasonably probable that the outcome would have been different. We also conclude that the court did not abuse its discretion in granting the Herricks' petition under the Probate Code standard.

Vanisha contends that the probate court should have applied the standard in *LaMusga*, which was decided under Family Code section 7501. (*LaMusga, supra*, 32 Cal.4th at p. 1087.) In *LaMusga*, our Supreme Court reaffirmed that under section 7501, the parent with primary physical custody has a presumptive right to change the child's residence unless the move would result in prejudice to the child's rights or welfare. (*Id.* at p. 1094.) The

9

court concluded that "the noncustodial parent bears the initial burden of showing that the proposed relocation of the children's residence would cause detriment to the children, requiring a reevaluation of the children's custody." (*Id.* at p. 1078.) "If the noncustodial parent makes an initial showing of detriment, the court must perform the delicate and difficult task of determining whether a change in custody is in the best interests of the children." (*Ibid.*)

Even assuming the trial court committed any error in failing to apply this Family Code standard, it would be subject to reversal only "upon a showing it is reasonably probable that, but for the error, the appealing party would have obtained a more favorable outcome." (*In re S.G.* (2021) 71 Cal.App.5th 654, 673 [cleaned up].) We conclude Vanisha has not made such a showing. Putting aside whether Vanisha could have met her initial burden of showing that relocating to Montana would cause detriment to S.T. under the *LaMusga* standard, the probate court has already determined that awarding Vanisha custody would not be in S.T.'s best interests when it denied her petition to terminate the guardianship. The court concluded that "it continues to be in [S.T.'s] best interest to remain in the custody of her guardians, *whether they reside in California or in Montana.*" (Italics added.)

Both the Probate Code and *LaMusga* analyses hinge on the child's "best interests." (See Prob. Code, § 2352, subd. (a); *LaMusga, supra*, 32 Cal.4th at p. 1078.) The substantial overlap between the standards is evidenced by the fact that the probate court here considered the same factors identified in *LaMusga*, including S.T.'s age, community ties, health and educational needs, and preferences. (*LaMusga, supra*, 32 Cal.4th at p. 1089.) For example, the court noted that S.T. would "be eleven years old in June of 2023." It acknowledged that S.T. "did not want to move to Montana" because

10

it is "plain farmland" and because she would not "see her mom that much." The court nonetheless found that the evidence "established that a residence in Montana would be a least-restrictive, appropriate residence, available and necessary to meet [S.T.'s] needs, with good schools and enrichment activities in an open rural environment, and that the move was necessary for the family's financial considerations." While recognizing Vanisha's concern that the population in Kalispell might be less diverse than in San Diego, the court found there was no evidence contradicting that Kalispell is still a suitable location to raise S.T.

Furthermore, the court in *LaMusga* reaffirmed a statement from a prior case that "the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker weigh heavily in favor of maintaining ongoing custody arrangements." (*LaMusga, supra*, 32 Cal.4th at p. 1093, citing *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32–33 (*Burgess*).) The same considerations were taken into account in this case because, as the probate court recognized, the Herricks have provided stable care for S.T. as her primary caretakers for most of her life. The court in *LaMusga* found significant that there was "nothing in the record before [it]" that indicated the family court "failed to consider the children's 'interest in stable custodial and emotional ties' with their mother." (*LaMusga*, at p. 1093.) Similarly, the probate court here noted that it was "mindful that the relationship between [S.T.] and [Vanisha], her mother, is important to both of them." The court still found, however, that the evidence "established that the parties have closely followed the court's visitation orders in the past" and that "[t]hrough appropriate visitation orders, [S.T.]

will be able to maintain her relationship with [Vanisha], even from Montana."

While Vanisha may disagree with the court's weighing of the evidence, she has not shown that the court failed to consider factors from the family law context that would have changed the outcome here. As our Supreme Court observed, " 'bright line rules in this area are inappropriate: each case must be evaluated on its own unique facts[,]' " and appellate courts rarely reverse a family court's exercise of discretion regarding move-away orders. (*LaMusga, supra*, 32 Cal.4th at pp. 1089, 1092.) In its analysis of the unique facts in this case, the probate court considered the equivalent of the *LaMusga* factors, even if the court did not expressly set out to apply them. We therefore conclude it is not reasonably probable that Vanisha would have obtained a more favorable outcome under *LaMusga* and Family Code section 7501.

For similar reasons, we reject Vanisha's contention that if the probate court was correct in applying the "best interests" standard in Probate Code section 2352, subdivision (a), the court abused its discretion[2] in granting the Herricks' petition. Generally, in the analogous move-away context, a family court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best interests of the child. (*Burgess, supra*, 13 Cal.4th at p. 32.) As noted, the court based its decision to grant the Herricks' petition on S.T.'s need for stability, her deep bond with the Herricks, the Herricks' cost of living, and Kalispell's suitability as a place where S.T. could thrive. The court also ordered a visitation schedule that would still allow S.T. and Vanisha to communicate weekly and spend

_____

[2]	The parties assume that an abuse-of-discretion standard applies when reviewing the probate court's "best interests" analysis under Probate Code section 2352, subdivision (a), and we have found no authority to the contrary.

significant time together in-person to maintain a relationship.  Rather than ignore S.T.'s preferences and the importance of her relationship with Vanisha, the court appropriately weighed those interests against S.T.'s immediate and long-term needs.  Given the "wide discretion" family courts exercise in making decisions impacting custody and parenting plans, we cannot say that the court abused its discretion here.  (*LaMusga, supra*, 32 Cal.4th at pp. 1095, 1099.)  Accordingly, we affirm.

DISPOSITION

The order granting the Herricks' petition to fix S.T.'s residence outside the state of California is affirmed.  The parties shall bear their own costs on appeal.


BUCHANAN, J.

WE CONCUR:


IRION, Acting P. J.


DATO, J.

13