Filed 9/30/24  T.D. v. J.H. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| T.D., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> J.H., <br><br> Defendant and Respondent. | B329616 <br><br> Los Angeles County <br> Super. Ct. No. 21VEPT00013 |

APPEAL from an order of the Superior Court of Los Angeles County.  Gary D. Roberts, Judge.  Affirmed.

James Alex Karagianides for Plaintiff and Appellant.

David Zarmi for Defendant and Respondent.

_____

**SUMMARY**

The mother in this custody action appeals from a family court order denying her request to modify orders that awarded primary physical custody of their child to the father. Mother contends the trial court abused its discretion when it declined to order joint physical custody. She contends the court based its decision on the erroneous belief that her previous request to relocate the child to Illinois had been made in bad faith. She asks us to remand the case so that her request for joint physical custody can be considered without regard to her earlier move-away request.

We disagree with mother's view of the record, and we find no abuse of discretion in the trial court's conclusion that it was in the best interest of the child to remain in the primary physical custody of the father.

**FACTS**

**1.    The Background**

The child, H.H., was born in 2014. Mother and father were not married, and they separated in the summer or fall of 2019. Shortly after that, mother began a relationship with another man to whom she is now married. Until 2021, mother and father cooperated with each other and shared parenting responsibilities for H.H.; between October 2019 and May 2021, they provided relatively equal care for H.H.

In February 2021, mother sought physical custody of H.H. and permission to relocate the child to Oak Park, Illinois, where her then-fiancé worked and lived with his two young children. Mother was pregnant with her fiancé's child due in August 2021. Father opposed her petition.

In May 2021, mother relocated to Oak Park, Illinois. The child remained in Los Angeles with his father, except for several weeks during the summer of 2021, while proceedings on mother's

2

move-away request continued.  (The parents stipulated to a parenting schedule "from approximately mid May 2021 through mid September 2021 (the trial)," and also that "[t]he temporary parenting schedule for the indicated period shall not be construed as or deemed the status quo.")

A trial took place on several days in September, October and December 2021, and the matter was submitted to the court on March 22, 2022.  The court (Judge Firdaus F. Dordi) issued a decision on June 1, 2022, awarding primary physical custody to father "in that [H.H.] will reside primarily with [father] during the school year, and he will have custodial care of [H.H.] at all times not designated to [mother]."  Among its many findings, the court stated that no ill motive factored into mother's reason for moving to Illinois; that is, "the lessening of time with [father] was merely a consequence or an impact of the move, not a motive for it."

One month later, on July 1, 2022, mother filed a request for modification of the court's orders, seeking joint physical custody with a shared parenting schedule that split time equally between the two parents.  Mother's declaration stated that while the court's final ruling on her move-away request was pending, she received permission to work remotely from California and her family decided to relocate to Los Angeles "to ensure that my relationship with [H.H.] would not be further compromised and marginalized."  She stated she permanently resided in Los Angeles as of June 11, 2022.

 Father opposed mother's request.  Among many other things, he stated that mother relocated to San Marino, 25 miles away from H.H.'s current home and extra-academic activities, and traveling from San Marino to the Valley would take about one hour or more in each direction, each day.

While mother's modification request was pending in the summer of 2022, the parties had various disagreements over the schedule for parenting time. Mother then decided to keep H.H. for the entire summer, in reliance on Judge Dordi's order that mother would have custodial care of H.H. during summer break each year (in Chicago). Mother did not allow H.H. to attend a birthday party in Atlanta for his grandmother and great-grandmother.

The parties' papers contain many other claims and arguments that we need not describe here.

## 2. The August 31, 2022 Hearing

On August 31, 2022, the court (Judge Gary D. Roberts) held a hearing on mother's request. The court began by observing the papers "are full of tit-for-tat, and that's not child-focused." The court also stated that "the biggest concern that I have when I read about a child missing important family events is that the child in the long-term when the parents aren't able to work together is going to be harmed by that. . . . [M]y reaction to a child missing an important family event is very, very negative."

The court stated its tentative decision was that a request for "a 2-2-5" (custody shared equally) "when the parents live 15 or 20 or 25 miles away is not reasonable. That is not child-focused. So if in fact the distances are anything like that, that will not be something that the court will entertain."

After arguments on the distance issue, the court turned to "the other issue . . . and that is the change in the routine of the child. . . . [¶] So let's recap what just happened. We put the child through a 730 evaluation. You [mother] made a representation to the court that you were moving. [¶] . . . [¶] . . . Judge Dordi made a very elaborate, extensive order as a result of that, and now you change your mind, and you want to undo all that; right? Is that a fair summary?" Mother replied

4

that, "It's less of a change of mind, but I felt that I was losing my relationship with my son." The court stated, "[L]ook, as a parent, I totally get what you're saying . . . . What it looks like you did was you gave it a shot. You made representations to the court. It didn't work, and now you're doing something different. That's what it looks like."

After an exchange about the timing of mother's decision to move back and Judge Dordi's order, mother's counsel stated that when mother decided to move back, counsel called the clerk directly (apparently around May 5, 2022) and said, "Please advise the court my client is moving back to town and that we are trying to negotiate a new schedule." Counsel argued that through her (counsel's) call to the clerk, mother thus "withdrew [her move-back request] before the court made an order. So it isn't like she lost or didn't prevail." The court responded, "Right. No, and that's fair. That part is fair. I hear you on that . . . . And again, I'm not sure that's the big issue. [¶] The bigger issue is the child has established a routine over this period of time, and now we're undoing it; right?"

After hearing further from mother's counsel, the court stated it understood the argument, but observed that "[y]ou're making all these arguments less than six months after you were arguing to the court that it was in the minor's best interest to be pulled halfway across the country and separated from the Dad. There is an irony there that's hard for me to ignore." When counsel pointed out mother at the time had no option because she was pregnant and newly married to a man who lived in Chicago, the court stated: "But you can understand how the juxtaposition of those two things can feel like it's focused on her needs as opposed to the child's needs."

The court then turned to "the other thing that just jumped off the page," which was "what on earth happened with Grandma

and Great-Grandma's birthday party?" Mother responded with an explanation blaming father for causing scheduling difficulties that eventually resulted in H.H. spending the entire summer with mother and not traveling to Atlanta with his father for the party. Father's counsel and father responded with father's version of the facts.

The court also asked the parties to address "the stipulation concerning what use can be made of how [H.H.] spent his time during the . . . trial, during the period of time that [H.H.] was living here after mother . . . had moved away." Father's counsel argued that H.H. was eight years old and "we can't ignore what has been happening." Mother's counsel argued "that's not the point," and "[t]he point is the parties stipulated"; counsel suggested the status quo "cannot be included in the court's thought process to make new orders today."

### 3. The September 9, 2022 Oral Statement of Decision

On September 9, 2022, the court rendered its statement of decision in open court. The court first explained that Judge Dordi's "detailed orders on a whole host of things" would remain in effect except to the extent changed by its own order. That included Judge Dordi's rejection of mother's claim to have been the primary parent, and Judge Dordi's finding that "at least by slight extent, [mother] was not as good at co-parenting and communicating as [father]." Mother produced "no new evidence now on that point," and "certainly nothing that, in the court's judgment, was supported by specific credible evidence."

The court then proceeded to "background" findings "relating specifically to ways in which [mother] engaged in conduct that was not child-centered." That included the move-away "with the attendant stress on a child," followed by move-back "as the matter was standing submitted." This "to some

6

extent calls into question the initial motives for the move-away and certainly calls into question the necessity for it." All this "was clearly not child-focused, and that's really the focus of my finding there."

The court observed that mother "then proceeded to misuse [Judge Dordi's] order." This referred to mother's conduct in keeping H.H. with her for the entire summer of 2022, after she moved back to Los Angeles, in reliance on the initial custody orders that were premised upon her living in Illinois. The court stated mother "misused the order created for other circumstances to deprive the minor of meaningful contact with [father] for an extended period of time," and the misuse was "certainly not child-centered." The court contrasted father's conduct at the previous hearing, when the court asked him how to get H.H. some time with mother. "Rather than respond in a retaliatory way, he immediately offered up Labor Day weekend. That was significant to the court."

"The court is very concerned and finds that it was not child-centered that [mother] deprived the minor of the ability to attend an important family event, the joint birthday party of the child's grandmother and great-grandmother. The court believed that [father's] versions of what had transpired was more credible."

"Perhaps most significantly, when moving back to the L.A. area, [mother] located to an area some 17 to 18 miles or so away from the minor's school. The court was given no evidence as to why the petitioner made that decision. It certainly, on the face of it, does not appear to be child-centered, and the court was given no evidence that it was. [¶] . . . [T]he point is that there was no reason given as to why [mother] could not have located closer to the child's life or at least why that was not considered."

The court stated it was "clear to the court" that it was "in the minor's best interests to remain in the primary physical custody of [father]. [¶] With the background of the [findings] I discussed above, I want to lay out two predominant considerations for the court's order, either of which independently would have led the court to the same conclusion."

The first was "a need for stability for the minor. He's thriving. He's been through a period of uncertainty. That needs to end. [¶] The status quo . . . is, in fact, relevant under these circumstances. The prior stipulation that the status quo would not be considered during the pendency of the move-away doesn't change the fact that it's highly relevant now and can be considered now."

The second "predominant consideration" was that "the distances between [mother's] residence and the minor's school are too far away to make sure custody is in the minor's best interests." "The commute times involved from [father's] house to the minor's school . . . versus the distance between the minor's school and [mother's] residence are substantially different and, on average, in the court's view, would take approximately twice as long. [¶] The fact that the court was presented with evidence that sometimes it can be only 50 percent longer doesn't really change that conclusion. And the court is well aware of the traffic patterns in Los Angeles in that area and what a commute of 17 to 18 miles can turn into and was provided with evidence on that point. So the court's conclusion is that the distances are too far— too far—to make shared custody feasible. [¶] These factors are, as I said, the predominant ones in the court's mind."

The court entered its findings and order after the hearing on mother's custody modification request on April 20, 2023. The

8

court's 14 orders included its finding that mother's move-away "was not child centered and rendered moot by [mother's] move-back to California, and the misuse of the Court Orders." Mother filed a timely appeal.

## DISCUSSION

We review custody orders for abuse of discretion. "The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child. We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 (*Burgess*).)

Mother begins by asserting there are important legal presumptions "that favor joint physical custody." There is no such presumption in this case, as the Family Code and *Burgess* make clear. "The Family Code specifically refrains from establishing a preference or presumption in favor of *any* arrangement for custody and visitation. Thus, Family Code section 3040, subdivision (b) [now subd. (e)], provides: 'This section establishes neither a preference nor a presumption for or against joint legal custody, joint physical custody, or sole custody, but *allows the court and the family the widest discretion* to choose a parenting plan that is in the best interest of the child.' " (*Burgess, supra,* 13 Cal.4th at pp. 34-35, italics added by the *Burgess* court.)

Then mother claims that in this case there are important "factual presumptions" that favor joint physical custody. For this, she cites the parties' cooperative parenting before her move-away request. That cooperation evaporated long ago and cannot now be a fact favoring joint custody.

9

Mother purports to recognize that we do not reweigh the evidence to determine whether joint physical custody is in H.H.'s best interest. She nonetheless contends we must consider "context" and "[r]eliance upon improper criteria is grounds for reversal." "Context" is nothing more than an invitation to reweigh the evidence, which we necessarily decline. Nor do we agree that the trial court relied "upon improper criteria."

Mother repeatedly asserts that the trial court made a factual finding that mother "acted in bad faith" by requesting a move-away order and then withdrawing the request. Mother asserts the trial court "placed substantial weight on its belief that [mother's] earlier move-away request was not in good faith," and claims the court suggested mother's objective in her move-away request "was to damage [H.H.'s] relationship with [father] by 'pull[ing] [H.H.] halfway across the country.'"

These claims are wrong. The trial court at no time found that mother acted in bad faith; the court never mentioned "bad faith" (or lack of good faith). As can be seen from our detailed description of the court's comments, the court questioned mother's motives, but in the sense that her move-away request was not "child centered" and instead was centered on her own needs. (As already mentioned, the court said: "But you can understand how the juxtaposition of those two things can feel like it's focused on her needs as opposed to the child's needs.") The court at no time suggested, as mother claims, that one of her objectives in her move-away request "was to damage [H.H.'s] relationship with [father]." That would be bad faith, as discussed in a slightly different context in *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1100 ("Even if the custodial parent has legitimate reasons for the proposed change in the child's

10

residence and is not acting simply to frustrate the noncustodial parent's contact with the child [i.e., in bad faith], the court still may consider whether one reason for the move is to lessen the child's contact with the noncustodial parent").  The court here made no such suggestion of bad faith, explicitly or implicitly.  Mother's related claim that the trial court "improperly sanctioned her for withdrawing the move-away request and returning to Los Angeles" likewise has no basis in the evidence.

Finally, mother contends that the trial court's "other observations" are insufficient to support the custody order.  As a review of the court's oral statement of decision shows, those "other observations" were in fact the stated reasons for the trial court's order.  At the risk of repetition, the trial court identified "two predominant considerations for the court's order, either of which independently would have led the court to the same conclusion."  These were the need for stability for the child and the distance between mother's residence and the child's school.  Substantial evidence supported the trial court's conclusion that remaining in the primary physical custody of father was in H.H.'s best interest, and we will not reweigh the evidence to conclude otherwise.  There was no abuse of discretion.

## DISPOSITION

The order is affirmed.  Respondent to recover costs on appeal.


GRIMES, J.


WE CONCUR:

STRATTON, P. J.      VIRAMONTES, J.


11