Filed 6/9/25  P. v. Lyons CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ADRIAN LYONS, <br><br> Defendant and Appellant. | F087559, F088090 <br><br> (Super. Ct. No. BF136638A) <br><br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, Christina Simpson, Lewis A. Martinez, Kari Mueller, and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Adrian Lyons was convicted of attempted murder and aggravated mayhem, among other things. He appeals from a February 1, 2024 order following a resentencing hearing under Penal Code[1] section 1172.75 and a May 21, 2024 order denying his petition for resentencing under section 1172.6. Defendant makes two arguments. First, at the section 1172.75 hearing, the trial court should have imposed and executed the determinate sentence for the attempted murder conviction rather than the indeterminate sentence for the aggravated mayhem conviction. Second, the trial court erroneously denied his section 1172.6 petition because it failed to consider whether he had intent to kill the victim.

We conclude the trial court did not abuse its sentencing discretion at the section 1172.75 hearing. We also conclude the trial court erroneously denied defendant's section 1172.6 petition.

## BACKGROUND

### I. The shooting[2]

G.Z., a self-employed taxi driver, was at a casino when two men—defendant and Jeffrey Rector—requested a ride. G.Z. ended his card game and met the pair outside. Defendant and Rector sat in the back of the taxi and Rector instructed G.Z. to go to a nearby intersection. Rector then directed G.Z. to drive down an alley, but G.Z. declined and stopped on the street. After G.Z. advised the fare was five dollars, Rector refused to pay and instead demanded G.Z.'s money. G.Z. did not comply. Defendant and Rector continued talking. Finally, defendant ordered G.Z. to exit the vehicle. G.Z., who feared for his life, got out of the car. Rector pulled out a gun and shot G.Z. twice. Thereafter,

---

[1] Unless otherwise indicated, subsequent statutory citations refer to the Penal Code.

[2] This section is based on a factual summary in our prior nonpublished opinion. (See *People v. Rector* (Mar. 19, 2014, F064902, F065064) as modified Apr. 1, 2014.)

G.Z. got back inside the taxi, picked up his telephone, and called emergency services. He heard the gun dry firing, so he drove away.

Bakersfield Police Officer Ward responded to the scene of the taxi and observed what appeared to be two gunshot wounds on G.Z.'s neck and face, respectively. Ward also located a black head wrap approximately 100 to 150 feet from the vehicle. At trial, the parties stipulated the head wrap belonged to defendant and was in his possession at the time of the shooting.

## II. Defendant's convictions and sentencing

In 2012, the jury convicted defendant of attempted murder (§§ 187, subd. (a), 664 [count 1]), aggravated mayhem (§ 205 [count 2]), attempted robbery (§§ 212.5, subd. (a), 664 [count 3]), and gang participation (§ 186.22, subd. (a) [count 4]). In connection with counts 1 through 3, the jury found true the following allegations: (1) defendant committed the offense for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, former subd. (b)(1)); and (2) he was a principal in the commission of the offense and at least one principal personally and intentionally discharged a firearm and caused great bodily injury to a person other than an accomplice (§ 12022.53, subds. (d), (e)(1)). In a bifurcated proceeding, the trial court found true three allegations defendant served a prior prison term (§ 667.5, former subd. (b)).[3] At sentencing, the court imposed the upper term of nine years plus 25 years to life for the vicarious firearm discharge enhancement and three years for the three prior prison term enhancements on count 1. As for the remaining counts, the court imposed punishment but stayed execution thereof pursuant to section 654.

---

[3] The offense underlying each prior prison term allegation was unlawful firearm possession by a convicted felon (former § 12021, subd. (a)(1)).

3.

In 2014, this court vacated the jury's true findings as to the gang and vicarious firearm discharge allegations and remanded the matter for resentencing. (*People v. Rector*, *supra*, F064902, F065064.) On remand, the trial court imposed life with the possibility of parole plus three years for the three prison term enhancements on count 2. As for the remaining counts, the court imposed punishment but stayed execution thereof pursuant to section 654. In 2015, this court affirmed the judgment. (*People v. Lyons* (Dec. 14, 2015, F070167) [nonpub. opn.].)

### III.    Defendant's section 1172.75 petition

On January 16, 2024, defendant filed a "SENTENCING STATEMENT" regarding resentencing under section 1172.75. Specifically, he asked the trial court to (1) "strike the 667.5(b) priors"; and (2) in exercise of its discretion, "sentence [him] on Count 1, attempted murder and stay the sentences on Counts 2 and 3." Among other things, defendant emphasized he "was only 23 at the time of this offense"; "has accepted responsibility for his actions on the night of the robbery"; "has obviously matured while he has been incarcerated" "for more than 12 years"; and "has taken advantage of the rehabilitation modalities available in the prison."

In an "Updated Presentence Report" filed February 1, 2024, the probation officer identified four circumstances in aggravation: (1) "defendant's prior convictions as an adult and sustained petitions in juvenile delinquency proceedings are numerous"; (2) "defendant was on parole when the crime was committed"; (3) "defendant's prior performance on parole was unsatisfactory in that he re-offended"; and (4) "defendant has served three prior prison terms." (Underscoring omitted.) The officer recommended "the Court strike the [section] 667.5(b) allegation/s as they are now legally invalid" and "defendant be sentenced" "for the term prescribed by law of Life with a minimum parole eligibility date of seven years" for the aggravated mayhem conviction. (Underscoring omitted.)

On February 1, 2024, the trial court held a resentencing hearing. Following counsels' arguments, the court struck the three prior prison term enhancements. It then pronounced:

> "Regarding determining the appropriate sentence in this case, the Court has been asked to consider under [section] 654 what the appropriate sentence should be recognizing that the Defendant was convicted of a number of charges all during the single course of conduct.
>
> "And in doing so, before the amendment to . . . [s]ection 654, the Court was required to choose the longest sentence possible and then if truly a [section] 654 situation without separate victims being included, the other sentences would be stayed.
>
> "In this particular case, because of the amendments to . . . [s]ection 654, the Court is in a position to determine what it believes to be the appropriate sentence given the totality of the circumstances. [¶] Factors that the Court can consider include the actual conduct and culpability of the Defendant individually. [¶] Other factors the Court can include involve any mitigating circumstances as well as aggravating circumstances and the like. The Court is directed to factors it should consider when making this discretionary decision.
>
> "One thing that is interesting in this particular case is the determination of what the Defendant's actual culpability was given the totality of the circumstances.
>
> "And based on changes in law, Count 1 that charges and the Defendant was convicted of attempted murder with the changes in law specifically relating to reliance on an aiding and abetting theory where now the prosecution must prove that the aider and abettor also had a specific intent to kill as well as knew the perpetrator's intent while aiding and abetting.
>
> "It does appear that it's going to be difficult, albeit impossible for the prosecution to prove that that is a factor the Court must consider when determining the utilization of aiding and abetting as relates to the charges that have been filed against the Defendant and the convictions the Defendant has suffered.

"Aiding and abetting as a liability theory when utilized and applicable does apply somewhat differently to murder charges. [¶] Those have included not only first and second degree murder, but also voluntary manslaughter in addition to the attempted murders and the like.

"Unlike those specific charges as articulated in . . . section[s] 188 and 189 as they have been amended, the aiding and abetting theory, the general aiding and abetting theory and the reliance on such theory for culpability and liability as it applies to other types of charges does not require a specific intent to kill based upon the aider and abettor. [¶] The aider and abettor has to know of the perpetrator's intent and then has to aid that person in fulfilling that intent.

"That draws the Court's attention to the attempted robbery conviction as well as the aggravated mayhem conviction. [¶] Aggravated mayhem does have particular elements necessary as it relates to proving the perpetrator guilty. That is the person who actually committed the act that caused mayhem. [¶] But one that applies to an aider and abettor, the aider and abettor must know the perpetrator's intent and then must aid and assist that perpetrator in accomplishing that intent.

"For this particular case, it does appear to the Court that when considering the actual culpability of [defendant], it is far more reasonable to infer and reach the determination that [defendant's] conduct in this case was as an aider and abettor specifically as it relates to the attempted [robbery] and the mayhem. [¶] . . . [¶]

"Regarding the attempted murder, again, while that can be proven, given the totality of the circumstances, it does appear most accurate and reasonable that the Defendant's conduct was aiding and abetting Mr. Rector in committing attempted robbery as well as aggravated mayhem.

"For those reasons, that's what it appears to this Court regarding determining, based on the Defendant's conduct and the charges, what his actual role was during the entire course of this case.

"In considering the sentencing statement, the Court . . . is going to use as the principal count Count 2, a violation of aggravated mayhem, for the appropriate sentence determination. [¶] . . . [¶]

"The Court does find and will consider as an appropriate mitigating circumstance that the Defendant was youthful or less than 26 years old at the time this offense was committed.

6.

"In circumstances in aggravation, it does appear to the Court that in reviewing the Defendant's criminal history that the Court will find that a number of aggravating circumstances exist. [¶] Firstly, that the Defendant's prior convictions as an adult and sustained petitions in juvenile delinquency proceedings are numerous, that the Defendant was on parole when this crime was committed, and that his prior performance on parole was unsatisfactory in that he reoffended and that he has also served three prior prison terms. [¶] The Defendant's criminal history includes one juvenile adjudication and three felony convictions. [¶] The Defendant was paroled on May 13, 2010, which was less than one year from when the date of this incident occurred, that being April 26, 2011.

"Qualitatively, in considering the circumstances in aggravation as well as mitigation and in addition considering the work that the Defendant has done while in custody to better himself, the Court will, nonetheless, find that the circumstances in aggravation still outweigh the circumstances in mitigation and on that basis will determine that where applicable the upper term will be used.

"For those reasons, the Court is going to sentence the Defendant as follows.

"As to Count 2, a violation of . . . [s]ection 205, probation is denied. [¶] The Defendant is sentenced to the Department of Corrections for the term prescribed by law of life with the minimum parole eligibility date of seven years. [¶] . . . [¶]

"As to Count 1, a violation of . . . [s]ection 664–187(a), probation is denied. [¶] The Defendant is sentenced to the Department of Corrections for the upper term of nine years. [¶] This sentence is stayed pursuant to . . . [s]ection 654.

"As to Count 3, a violation of . . . [s]ection 664–212.5(a), probation is denied. [¶] The Defendant is sentenced to the Department of Corrections for the upper term of three years. [¶] This sentence is stayed pursuant to . . . [s]ection 654."

## IV. Defendant's section 1172.6 petition

On June 23, 2022, defendant filed a petition for resentencing pursuant to former section 1170.95, which has since been renumbered section 1172.6. (See Stats. 2022, ch. 58, § 10.) He marked the following checkboxes:

"1.    A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.  [Citation.]

"2.    I was convicted of **murder**, **attempted murder**, or **manslaughter** following a trial or I accepted a plea offer in lieu of a trial at which I could have been convicted of murder or attempted murder.  [Citation.]

"3.    I could not presently be convicted of murder or attempted murder because of changes made to . . . §§ 188 and 189, effective January 1, 2019.  [Citation.]"

On March 3, 2023, the trial court concluded defendant's petition set forth a prima facie case for relief and issued an order to show cause.

An evidentiary hearing was held on May 21, 2024.  Following counsels' arguments, the court concluded "the People have proven beyond a reasonable doubt that the defendant is guilty of attempted murder when applying the changes in the law to . . . [s]ection[s] 188 and 189" and denied defendant's petition.  It reasoned:

> "As counsel is aware, armed robbery alone is not sufficient to find that an individual was acting with reckless indifference to human life.  The Court must conduct an individualized assessment of the facts, which is required and on this matter does become a review on a case-by-case basis.  In considering the factors articulated in *People v. Clark* (2016) 63 Cal.4th 522 and *People v. Banks* (2015) 61 Cal.4th 788 . . . for purposes of determining whether the defendant was a major participant in the underlying felony and whether he acted with reckless indifference to human life, the Court has considered comments from counsel as well as the exhibits already noted for the record.

> "The Court is going to find regarding these particular factors and in no particular order, that the defendant was a major participant in the robbery.  That he planned the robbery with Rector upon [G.Z.] as the victim.  That the defendant while he did not have any weapons on his person, he was definitely aware that [Rector] had a firearm on his person.  That they engaged in the planning and eventual robbing of [G.Z.].

8.

"The defendant's statements in the parole hearing included that—from the defendant, quote, [Rector] had the firearm. I knew that earlier that day as well. End quote. And then additionally, quote, so I take the responsibility for [G.Z.] getting shot, sir. End quote.

"The defendant in this case planned the robbery while knowing that Rector was armed with a firearm. There are particular dangers posed by the nature of the crime planned by the defendant in this particular case because he was aware that a cohort of his was armed with a firearm.

"The defendant was also at the scene of the crime and he was in a position to prevent the actual attempted murder, even though he did not do anything to prevent it. And after lethal force was used the defendant ran from the scene. He did not help, aid, or assist the victim in this case in seeking or obtaining medical treatment.

"The defendant knew that Rector possessed the firearm. He was present at the crime and did not aid the victim. The duration of this felony was not so abrupt that it was spontaneous in nature simply because there was planning involved. And to the extent it was expressed before the jury regarding the duration of this planning, one can reasonably infer that it took a lot longer than a garden variety or typical robbery case might take.

"Regarding the defendant's efforts to minimize the risk of violence during the felony, he did not do anything to minimize the risk of violence. In fact, at least a portion of the evidence presented today that was presented previously was in reference to the victim's testimony that at one point the victim said that the defendant said to get out of the car. It is apparent and it is not contested that Rector was the shooter in this case, that the defendant did not shoot [G.Z.] in this case.

"So the Court does find it significant that in participation of the armed robbery and the eventual attempted murder, that the defendant was the one who at one point told [G.Z.] to get out of the car. The Court has been asked to consider additional cases for its review as it relates to circumstances that might affect the Court's ruling.

"One consideration is the judicial notice of the defendant's age showing that he was younger or on the younger side. The prosecution in their rebuttal argument did ask the Court not to consider the age necessarily as that could be a sentencing factor to which the prosecution is partly right. The Court was asked to review *People v. Ramirez* (2021) 71 Cal.App.5th 970, which was a case involving a 15-year-old defendant who participated in an attempted carjacking with other gang members. . . . [T]he appellate

9.

court in that case found that the 15-year-old defendant lacked experience and maturity to appreciate risks that the attempted carjacking would escalate into a shooting. The appellate court further found that the 15-year-old defendant was more susceptible to pressure from fellow gang members to participate in the carjacking.

"In this particular case, the defendant was not 15 years old, nor was he as a teenager. He was approximately 23 years old at the time. While there was evidence of criminal street gang activity, the gravamen of the People's argument, at least in today's hearing, strongly suggests that the defendant's cohort was a brother-in-law or a family member, which would not necessarily mean gang involvement.

"The Court has considered this as it relates to *People v. Ramirez*, *supra*, 71 Cal.App.5th 970 in determining that the defendant at 23 years of age, one can reasonably infer as this court does, that the defendant did not lack the experience nor maturity to appreciate the risk that the robbery would escalate into a shooting. That the defendant's knowledge as a 23-year-old during the course of this case did include the defendant planning the robbery and the defendant planning it with a brother-in-law, who the defendant knew was armed with a firearm, and that the defendant undoubtedly knew that Rector was armed with a firearm.

"For those reasons, the Court is going to find that the defendant was a major participant in the underlying felony and that he acted with reckless disregard to human life."[4]

## DISCUSSION

### I. The trial court did not abuse its sentencing discretion at the section 1172.75 hearing.

"Before January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a prior prison term and had not remained free of custody for at least five years. [Citation.] Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) . . . amended section 667.5 by limiting the enhancement to only prior prison terms

---

[4] We reformatted the citations in the quoted text to conform to the general rules of citation outlined by the California Style Manual. (See generally Cal. Style Manual (4th ed. 2000).)

10.

served for sexually violent offenses. [Citation.] Enhancements based on prior prison terms served for other offenses became legally invalid. [Citation.]" (*People v. Carter* (2023) 97 Cal.App.5th 960, 966.)

"In 2021, the Legislature enacted Senate Bill No. 483 (2021–2022 Reg. Sess.) . . . , which, among other things, made the changes implemented by Senate Bill [No.] 136 [(2019–2020 Reg. Sess.)] retroactive. [Citation.] Senate Bill [No.] 483 added former section 1171.1, later renumbered as section 1172.75 [citation], to the Penal Code. [Citation.]" (*People v. Carter*, *supra*, 97 Cal.App.5th at p. 966, fn. omitted.) Section 1172.75, subdivision (a) provides:

> "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid."

"Once the Department of Corrections and Rehabilitation identifies those persons 'currently serving a term for a judgment that includes an enhancement described in subdivision (a)' to the sentencing court, 'the court shall recall the sentence and resentence the defendant.' " (*People v. Monroe* (2022) 85 Cal.App.5th 393, 399, quoting § 1172.75, subds. (b) & (c).)[5] Resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety" (§ 1172.75, subd. (d)(1)) and "shall not result in a longer sentence than the one originally imposed" (*ibid*.). "The court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (*Id.*, subd. (d)(2).) "The court may consider postconviction factors,

---

[5] The parties seemingly accept defendant was identified by the Department of Corrections and Rehabilitation.

including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (*Id.*, subd. (d)(3).) "Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (d)(4).)

Prior to 2022, "section 654, former subdivision (a) required that a defendant who committed an act punishable by two or more provisions of law be punished under the provision that provided for the longest possible term. [Citation.] Effective January 1, 2022, Assembly Bill [No.] 518 [(2021–2022 Reg. Sess.)] amended section 654, subdivision (a) to permit an act or omission punishable under two or more provisions of law to 'be punished under either of such provisions.' [Citations.] Thus, under newly amended section 654, a trial court is no longer required to punish under the longest possible term of imprisonment when multiple offenses are based on the same act or omission. [Citation.] Section 654 'now provides the trial court with discretion to impose and execute the sentence of either term, which could result in the trial court imposing and executing the shorter sentence rather than the longer sentence.' [Citation.]" (*People v. White* (2022) 86 Cal.App.5th 1229, 1236.)

"A trial court's decision to impose a particular sentence is reviewed for abuse of discretion and will not be disturbed on appeal 'unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' [Citation.]" (*People v. Jones* (2009) 178 Cal.App.4th 853, 860–861; see *People v. Carmony* (2004) 33 Cal.4th 367,

377 [reversal of resentencing decision under abuse-of-discretion standard unwarranted " ' "merely because reasonable people might disagree" ' "].)  Ultimately, a reviewing court is "required to uphold [a discretionary] ruling if it is correct on any basis, regardless of whether such basis was actually invoked."  (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32, citing *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.)

We conclude the trial court did not abuse its discretion when it imposed and executed the indeterminate sentence for the aggravated mayhem conviction rather than the determinate sentence for the attempted murder conviction.  At the February 1, 2024 resentencing hearing, the court acknowledged it had discretion under the amended section 654 "to determine what it believes to be the appropriate sentence given the totality of the circumstances."  These circumstances included defendant's "actual role" at the time of the offenses, i.e., as an aider and abettor; his age at the time of the offenses; his parolee status at the time of the offenses; his criminal history, i.e., "one juvenile adjudication and three felony convictions"; and his rehabilitative efforts in prison.  After weighing these various factors, the court still chose to impose the longer term, noting "the circumstances in aggravation still outweigh the circumstances in mitigation."  Accordingly, we reject defendant's argument the court simply "deferred" to the probation officer's recommendation.

## II.     The trial court premised its denial of defendant's section 1172.6 on inapplicable law.

"Effective January 1, 2019, the Legislature passed Senate Bill [No.] 1437 [(2017– 2018 Reg. Sess.)] 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' "  (*People v. Lewis* (2021) 11 Cal.5th 952, 959, quoting Stats. 2018, ch. 1015, § 1, subd. (f).)  "Through the passage of Senate Bill [No.] 1437 the Legislature

effectively eliminated the natural and probable consequences doctrine as it relates to murder convictions, and reduced the scope of the felony-murder rule." (*People v. Prado* (2020) 49 Cal.App.5th 480, 487.) "To effectuate these changes, the Legislature amended sections 188 and 189 . . . ." (*Ibid.*; see §§ 188, subd. (a)(3) ["Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."]; 189, subd. (e) ["A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."].) Senate Bill No. 1437 (2017–2018 Reg. Sess.) also "added [former] section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis*, *supra*, at p. 959.)

"In October 2021, the Governor signed Senate Bill No. 775 (2021–2022 Reg. Sess.) . . . , effective January 1, 2022. . . . Senate Bill No. 775 amend[ed] subdivision (a) of [former] section 1170.95 to allow persons convicted of 'attempted murder under the natural and probable consequences doctrine' and manslaughter (in addition to those convicted of murder) to seek relief from their convictions . . . ." (*People v. Coley* (2022) 77 Cal.App.5th 539, 544; see Stats. 2021, ch. 551, § 1, subd. (a) ["The Legislature finds and declares that this legislation . . . [¶] . . . [c]larifies that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons

14.

convicted of murder under the same theories."]; *People v. Langi* (2022) 73 Cal.App.5th 972, 978 [Sen. Bill No. 775 "expanded the scope of" Sen. Bill No. 1437's changes].)

"Effective June 30, 2022, the Legislature renumbered [former] section 1170.95 to section 1172.6 with no change in text." (*People v. Gonzalez* (2023) 87 Cal.App.5th 869, 871, fn. 1, citing Stats. 2022, ch. 58, § 10; accord, *People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.)

A petitioner is entitled to relief under section 1172.6 if three conditions are satisfied: (1) the prosecution "proceed[ed] under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine" (§ 1172.6, subd. (a)(1)); (2) "[t]he petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder" (*id.*, subd. (a)(2)); and (3) "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019" (*id.*, subd. (a)(3)). (Accord, *People v. Watson* (2021) 64 Cal.App.5th 474, 482 [former § 1170.95].)

"After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).) "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (*Ibid.*) "Within 60 days after the order to show cause has issued, the court shall hold a hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (*Id.*, subd. (d)(1).)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019.  The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion.  However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872[6] shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule.  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."  (§ 1172.6, subd. (d)(3).)  "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."  (*Ibid.*)

"Ordinarily, a trial court's denial of a section 1172.6 petition is reviewed for substantial evidence.  [Citation.]  Under this standard, we review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " '  [Citation.]  But where there is an issue as to whether the trial court misunderstood the elements of the applicable offense, the case presents a question of law which we review independently.  [Citation.]"  (*People v. Reyes* (2023) 14 Cal.5th 981, 988.)

---

**6** Section 872, subdivision (b) permits a finding of probable cause based in whole or in part upon certain hearsay testimony by law enforcement officers having specified experience or training.

Here, citing *People v. Clark* (2016) 63 Cal.4th 522 and *People v. Banks* (2015) 61 Cal.4th 788, the trial court found defendant was "a major participant in the robbery" and "acted with reckless disregard to human life." However, any reliance on *Clark* and *Banks* was misplaced. In *Banks*, our Supreme Court considered the circumstances under which an accomplice who was convicted of felony murder but lacked the intent to kill may nonetheless qualify as a "major participant" so as to be statutorily eligible for the death penalty (*Banks*, *supra*, at p. 794) and set forth the factors to be considered (*id.* at p. 803). In *Clark*, the high court affirmed the *Banks* factors (*Clark*, *supra*, at p. 611) as well as set forth the factors to be considered in deciding whether an accomplice to a felony murder acted with reckless indifference to human life (see *id.* at pp. 618–623). Here, defendant was convicted of attempted murder, not felony murder. (See *People v. Bland* (2002) 28 Cal.4th 313, 328 [no crime of attempted felony murder].)

"To prove the crime of attempted murder, the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' [Citation.]" (*People v. Canizales* (2019) 7 Cal.5th 591, 602.) "An accomplice can be guilty of attempted murder if the accomplice aids and encourages an attempted murder knowing of the direct perpetrator's intent to kill and intending to facilitate the killing. [Citations.] In other words, 'the person guilty of attempted murder as an aider and abettor must intend to kill.' [Citation.]" (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654, fn. 8, superseded by statute as stated in *People v. Emanuel* (June 2, 2025, S280551) ___ Cal.5th ___, ___–___ [2025 Cal. Lexis 3249, *11–*12].)

The parties agree (1) the court did not make any finding regarding an intent to kill; and (2) the matter should be remanded for another evidentiary hearing. We accept these concessions.

## DISPOSITION

The February 1, 2024 order is affirmed.  The May 21, 2024 order is reversed and remanded for an evidentiary hearing under section 1172.6.

DETJEN, Acting P. J.

WE CONCUR:


FRANSON, J.


DE SANTOS, J.

18.